Action to restrain defendants from carrying out an alleged contract on the part of the Fayetteville Graded Schools to convey certain real estate to defendant Harrison.
Plaintiff, a citizen and taxpayer residing within the Fayetteville Graded School District, alleges the purported contract was not executed by the board of trustees of said schools in the manner authorized by law and is not sufficient to entitle defendant Harrison to a conveyance.
Temporary restraining order was issued and made returnable before Judge Sinclair, who, after hearing the matter upon the pleadings and affidavits, adjudged that the attempted contract was void, and that the defendants be restrained and enjoined from completing the same.
The facts found by the court below were substantially these:
The corporate defendant is a chartered school district, incorporated under the name of Fayetteville Graded Schools, governed by a board of eleven trustees. In 1931, upon foreclosure of a deed of trust, which secured a loan from its sinking fund, defendant graded schools acquired title to the described property in order to protect its debt. The property is an unimproved vacant lot in the city of Fayetteville, not adjacent to nor connected with the school property. At a special meeting of the defendant's trustees on 20 May, 1936, W. C. Downing, chairman of the *Page 37 
property committee of said board, which consisted of himself and three other trustees, notified the board that he had an offer for the property, and the property committee was instructed to investigate the legality of private sale and to consider any offers for the property not less than $3,500, "with power to act."
On the afternoon of 22 May, 1936, the chairman of the property committee consulted an experienced real estate dealer and was advised that the property was worth $3,960, and the said chairman thereupon told him if he could sell it for that price a commission would be allowed him. Thereupon, the real estate dealer talked to the plaintiff about the property, and on the following morning secured his offer to buy, but when he communicated same to said chairman, was advised that the property had already been agreed to be sold to defendant Harrison.
It was not disclosed to the general public that the property was for sale. The property is worth considerably more than $3,500.
The agreement to sell to Harrison was in the form of a letter reading as follows: "This will acknowledge receipt of your check in the sum of $50.00 as a deposit to close the trade on the sale of Franklin Street lot belonging to Fayetteville Graded Schools to you for the sum of $3,500. We will proceed with the matter as soon as certain tax matters can be cleared up with the city. Signed: W. C. Downing, Chairman of Property Committee."
Defendant's charter provides that "all agreements affecting real estate and other obligations shall be deemed sufficiently executed when signed by the chairman and secretary of said board and attested by the seal of said corporation."
The plaintiff, on 23 May, 1936, filed a bid with the chairman of the board of trustees for the property at the price of $3,700, which was refused.
The judgment of the court below then proceeds to set forth the reasons for its conclusion, as follows:
"The question arises, was the transaction between Downing and Harrison, in Downing's home the night of 22 May, the action of the defendant's board of trustees, or that of the property committee? Another interesting question presents itself upon the face of the record: Is it legal for the trustees of public property to sell it at private sale, while withholding from the public the knowledge that the property is for sale? While in the view of the court the decision of this question is not necessary to a determination of this case, it ought not to be altogether ignored, as it is not unrelated to other questions of moral propriety on the part of the trustees of public property. It must be admitted that this question is not free from difficulty. *Page 38 
"Chapter 136, Public Laws of 1923, relating to the powers of the county boards of education and the sale by such board of school property, was amended by section 2, chapter 494, Public Laws of 1933, but not materially in the respect we are considering it. That section appears as C. S., 5470 (a), and is set down by Michie under the chapter on Education, still in juxtaposition with other sections relating to the county boards of education. Clearly, if the sale of school property were made by the county board of education, it would have to be at public auction. Generally speaking, the law requires the title of public school property to be in the county board of education; but, under section 4 of the School Machinery Act of 1933, and under a similar portion of the School Machinery Act of 1935, where all districts, both special, charter, and otherwise, were abolished, the law provides that the title to school property shall remain in the trustees of the special charter district when that district is included in a city administrative unit. The law seems to be silent as to the manner of disposition of property so held when it ceases to be used or useful as school property, although taking a general view of all the school legislation to date, it would seem that the State has adopted as its public policy that all public school property should be sold at public auction. It is, however, only by analogy that it could be said that the trustees of a city administrative unit, or city board, would be restricted to a sale by public auction, although the analogy is so strong and the reasons for such restrictions so manifest and so urgent, it would seem that the courts might well declare it to be the law of the land.
"The defendants demurred ore tenus to the complaint that it did not state facts sufficient to constitute a cause of action, and challenged the plaintiff's right to maintain his action. While it is elementary that the courts have no power under the Constitution to control the exercise of discretion vested in subordinate departments, such as the Fayetteville Graded Schools (Broadnax v. Groom, 64 N.C. 244), there is no attempt here to control any exercise of discretion. The plaintiff, who brings this suit in behalf of himself and other citizens and taxpayers within said charter district, charges in effect that the acts of the defendant's board of trustees and their agents are ultra vires, and indicate the pursuit of an illegal course of conduct in the name of the Fayetteville Graded Schools, in violation of the rights of the plaintiff and other taxpayers. The plaintiff does not charge the defendant with actual fraud, nor with corruption or moral turpitude. Constructive fraud need not originate in any actual evil design. `It is sufficient in a court of equity to allege acts, omissions, or concealments which involve a breach of legal or equitable duty, trust, or confidence, and tend to the injury of another or to the bringing about of an undue and unconscientious *Page 39 
advantage.' Jones v. North Wilkesboro, 150 N.C. 647. It is also alleged and admitted by both demurrer and answer that before the contract was made with Harrison the defendant's board of trustees, by a resolution, delegated the entire matter of the sale of the property to a committee of four, with the sole limitation that the price should not be less than $3,500, and declared that the action of the committee should be final. This is an allegation and admission that the trustees attempted to delegate a nondelegable power and responsibility. It means that they attempted to abdicate their solemn trust by a delegation of their authority. `The principle is a plain one that the public powers or trusts devolved by law or charter upon the council or governing body, to be exercised by it when and in such manner as it shall deem best, cannot be delegated to others. This principle may not prevent the delegation of duties which are ministerial, but where the trust committed to the governing body involves the exercise of functions which partake of a judicial character, it may not be delegated.' Murphy v. Greensboro, 190 N.C. 269.
"Here the trustees not only attempted to delegate their trusts to the property committee, but all the evidence would seem to indicate that the property committee attempted to delegate their alleged power, even though it was void, to its chairman.
"It is therefore considered, adjudged, and decreed that the demurrer be and it is hereby overruled, and that the defendants be and they are hereby restrained and enjoined from perfecting or completing the attempted contract of sale complained of, and that the contract entered into by and between the chairman of the property committee and J. R. Harrison be and it is hereby canceled, and declared null and void."
From the foregoing judgment defendants appealed.
The findings of fact of the court below were supported by the pleadings and affidavits presented to him, and his conclusions and judgment thereon are fully sustained by the authorities and statutes cited and by his clear and accurate reasoning therefrom.
While the good faith of the board of trustees of the Fayetteville Graded Schools and of the chairman of the property committee is in no way impugned, it is apparent that the words "with power to act" inserted in the record of the motion to instruct the property committee to investigate the legality of a private sale and to consider offers for the property should not be construed to constitute the valid delegation of power to the chairman of the property committee to execute a contract *Page 40 
for the sale of the property in a manner contrary to the method set out in the statute. The Fayetteville Graded Schools cannot in law be bound thereby.
The judgment, restraining the conveyance of the property pursuant to the attempted contract complained of, must be
Affirmed.