JERRY ALAN REESE, Plaintiff v. MECKLENBURG COUNTY, NORTH CAROLINA; MECKLENBURG COUNTY PUBLIC FACILITIES CORPORATION; 300 SOUTH CHURCH STREET, LLC; and R.B.C. CORPORATION, Defendants

NO. COA09-499

(Filed 15 June 2010)

**1. Pleadings— answers and counterclaims—motion to strike attachment—properly denied**

The trial court did not err by denying plaintiff's motion to strike an exhibit attached to defendants' answers and counterclaims. The trial court did not abuse its discretion by concluding that the material contained in the attachment had some "possible bearing upon the litigation."

**2. Pleadings— judgment on the pleadings—properly granted**

The trial court did not err in entering judgment on the pleadings on plaintiff's first claim for relief, requesting a determination that a resolution authorizing defendant county's purchase of certain real property was invalid. Plaintiff's allegations were insufficient to establish the manifest abuse of discretion necessary to set aside defendant county's purchase of the real property.

REESE v. MECKLENBURG CNTY., N.C.

[204 N.C. App. 410 (2010)]

**3. Pleadings— judgment on the pleadings—properly granted**

The trial court did not err in entering judgment on the pleadings on plaintiff's second claim for relief, seeking entry of an order nullifying a contract entered into by defendant county for the purchase of real property. Plaintiff's claim failed to allege a manifest abuse of discretion on the part of defendant county.

**4. Pleadings— judgment on the pleadings—properly granted**

The trial court did not err in entering judgment on the pleadings on plaintiff's fourth claim for relief, challenging the approval of financing for defendant county's purchase of certain real property. Plaintiff's allegations were merely conclusory and did not allege the facts necessary to establish a manifest abuse of discretion by defendant county.

**5. Pleadings— judgment on the pleadings—properly granted**

The trial court did not err in entering judgment on the pleadings on plaintiff's third claim for relief, seeking the nullification of an ordinance appropriating money to fund defendant county's acquisition of property for an urban park. As the trial court properly granted judgment on the pleadings in favor of defendants on plaintiff's first, second, and fourth claims, this claim failed as well.

**6. Jurisdiction— subject matter—claim properly dismissed**

The trial court did not err in dismissing plaintiff's amended claim for relief, which was predicated upon plaintiff's prediction that he would prevail in a related administrative litigation. Because the factual prerequisite for the maintenance of the claim had not yet occurred, the trial court did not have subject matter jurisdiction over the claim.

Appeal by plaintiff from orders entered on 14 May 2008, 9 June 2008, 15 September 2008, and 23 September 2008 by Judge W. David Lee in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 October 2009.

*Jerry Alan Reese, pro se.*

*Womble, Carlyle, Sandridge, & Rice, PLLC, by James P. Cooney, III, and G. Michael Barnhill, for defendant-appellees, Mecklenburg County, Mecklenburg County Public Facilities Corporation, 300 South Church Street, LLC, & R.B.C. Corporation.*

*Robinson, Bradshaw & Hinson, P.A., by Ward McKeithen, for defendant-appellees Mecklenburg County and Mecklenburg County Public Facilities Corporation.*

ERVIN, Judge.

This appeal involves a challenge to the conveyance of undeveloped real property located within the Second and Third Wards in the City of Charlotte by Plaintiff Jerry Alan Reese, a board-certified real estate attorney and real property developer.[1] The present case arises from a series of transactions entered into by the City of Charlotte, Mecklenburg County, and the Charlotte-Mecklenburg Board of Education for the purpose of consolidating jointly-held properties and constructing a minor-league baseball stadium,[2] an urban park, a new Education Headquarters, and other mixed-use developments that are intended to spur economic revitalization of the area. Plaintiff, who favors a competing development plan, has challenged a number of actions by the County and the Mecklenburg County Public Facilities Corporation in this case. After careful consideration of the record in light of the applicable law, we conclude that the challenged orders should be affirmed.

## I.  Factual Background

### A.  Substantive Facts

At the time Plaintiff filed his complaint, 300 South Church Street, LLC, owned two parcels of land situated within the Third Ward of the City of Charlotte, designated as (1) 316 South Church Street and (2) 316 South Poplar Street. Defendant R.B.C. Corporation owned five parcels of land located within the same area, designated as (1) 212/216 West Martin Luther King Jr. Boulevard; (2) 224 West Martin Luther King, Jr. Boulevard; (3) 301 South Mint Street; (4) 316 South Poplar Street; and (5) 322 South Church Street. These seven parcels of real property are contiguous and are referred to collectively in Plaintiff's complaint as the Assemblage.

In early December 2007, RBC and Spectrum Investment Services, Inc., entered into an agreement, known as the RBC Parcels Contract,

---

1. This Court has issued opinions in a number of related cases, including: *Reese v. Mecklenburg County*, —— N.C. App. ——, 676 S.E.2d 481 (2009) (*Reese I*), *Reese v. Mecklenburg County*, —— N.C. App. ——, 676 S.E.2d 493, *disc. review denied*, 363 N.C. 656, 685 S.E.2d 105 (2009) (*Reese II*), *and Reese v. Mecklenburg County*, —— N.C. App. ——, 685 S.E.2d 34 (2009) (*Reese III*).

2. The County plans to lease the stadium to Knights Baseball, Inc.

under which Spectrum agreed to purchase the five parcels owned by RBC. The County and 300 South Church Street negotiated an agreement, which is referred to in the complaint as the Assemblage Contract, under which the County would purchase the entire Assemblage from 300 South Church Street. The Assemblage Contract contemplated that, prior to closing, Spectrum would "assign to Defendant County its rights under the RBC Parcels Contract and Defendant County [would] assume the obligations of Spectrum under the RBC Parcels Contract." On 15 January 2008, the County Commission adopted a resolution, which is referred to in Plaintiff's complaint as the Assemblage Purchase Resolution, authorizing the purchase of the parcels owned by 300 South Church Street and RBC. On that same day, the County executed a joinder to the RBC Parcels Contract, under which "Spectrum assigned its rights to the County and the County assumed the obligations of Spectrum to RBC." In addition, the County Commission also adopted a resolution authorizing the sale of certain publicly-owned property located in the Second Ward to Brooklyn Village, LLC, which is referred to in Plaintiff's complaint as the Brooklyn Village Contract.

As part of the process of consummating this series of transactions, the County submitted an application seeking authorization to issue $161,310,000 in certificates of participation (COPS) to the North Carolina Local Government Commission on or about 12 December 2007. In its application, the County asserted that approval of such funding was necessary in order "to continue to provide and enhance court, school, community college, library, infrastructure and park facilities." On 18 December 2007, the County Commission adopted a resolution which included a "request[] [that] the Local Government Commission of North Carolina [] (LGC) approve such proposed installment financing contracts."

On 2 January 2008, Plaintiff provided the LGC with written notification that he opposed the proposed COPS financing and requested a hearing at "which Plaintiff and all other interested parties could be heard." On 8 January 2008, the LGC's Executive Committee approved the County Commission's application. Immediately after receiving official notice of the LGC's action, Plaintiff filed a notice of appeal and a request for *de novo* review by the full LGC. The LGC denied Plaintiff's request for *de novo* review on 25 January 2008. On 4 February 2008, Plaintiff filed a Petition for a Contested Case Hearing with the Office of Administrative Hearings seeking review of the LGC's decision. On 14 and 21 February 2008, the County and the

Financing Corporation sold approximately $161,000,000 in COPS. On 25 July 2008, the Honorable Fred Morrison, Senior Administrative Law Judge with the Office of Administrative Hearings, issued a Decision Granting Summary Judgment for Petitioner which reversed the LGC's decision and ordered it to provide Plaintiff with a *de novo* review of the County's application for approval of the COPS financing by the full LGC. In accordance with the relevant provisions of the Administrative Procedures Act, the matter was referred to the LGC for the making of a final decision.

## B. Procedural History

On 2 January 2008, Plaintiff filed a motion seeking the issuance of a summons and an extension of time to file a complaint and a notice of *lis pendens* applicable to tracts of real property owned by RBC and 300 South Church Street. On the same date, the office of the Clerk of Superior Court of Mecklenburg County granted Plaintiff's motion. On 22 January 2008, Plaintiff filed a verified complaint in which he which he asserted the following five claims for relief, which we summarize as follows:

1. The purchase price that the County had agreed to pay under the Assemblage Purchase Resolution and the related Assemblage Contract exceeded the actual value of the Assemblage by approximately 27%, or $4,024,988, as evidenced by the price paid to the County by the North Carolina Department of Transportation for a nearby tract of property "and the determination of the Mecklenburg County Real Estate Services Department," so that "the purchase price approved by the Assemblage Purchase Resolution has no relation to the true fair market value of the Assemblage, but is rather a contrived amount designed solely to accomplish a *de facto* swap of the Assemblage for the properties to be acquired by Brooklyn Village, LLC from the County pursuant to the Brooklyn Village Contract, so that the Assemblage Purchase Resolution should be nullified and set aside "on the grounds that the inflated purchase price is excessive and constitutes a manifest abuse of discretion by Defendant County and its Board."

2. The County already owns a 7.8 acre tract of land adjacent to the Assemblage which was acquired for use as a public park that has a fair market value of approximately $30,000,000 and which remains suitable for use as a public park, so that the execution of the Assemblage Contract should be nullified and set aside "on the grounds that the purchase which is the subject of such contract is

redundant, unnecessary and a material waste of $19,000,000 in public funds critically needed for other public purposes, and a manifest abuse of discretion by Defendant County and the Board."

3. The County adopted a Park Land Acquisition Capital Project Ordinance that appropriated $19,000,000 for the purpose of funding the acquisition of the Assemblage in accordance with the Assemblage Contract, with the funding to be used in reimbursing the appropriations to be utilized to purchase the property in question to come from installment financing to be completed during 2008, so that the Park Land Acquisition Capital Project Ordinance should be nullified and set aside "[s]ince the transaction underlying [that ordinance] is unlawful and since the source of reimbursement is also unlawful."

4. The application and supporting materials submitted to the LGC by the County in support of its application for approval of COPS financing are deficient in a number of respects, so that the COPS Financing Resolution "is unlawful, invalid and a manifest abuse of discretion by the Board of Defendant County" and should "be declared unlawful and set aside."

5. Since N.C. Gen. Stat. § 159-149 prohibits the consummation of COPS financing without final and unappealable approval from the LGC and since such approval had not been received due to Plaintiff's request for review of the County's application, the County and Defendant Mecklenburg County Public Facilities Corporation should be preliminarily enjoined from consummating the proposed COPS financing.

On 19 March 2008, the County and the Facilities Corporation filed a joint answer and counterclaims and 300 South Church Street and RBC filed separate answers ·and counterclaims. In addition, Defendants filed a joint motion seeking the entry of an order striking Plaintiff's notice of *lis pendens* and judgment on the pleadings. On 21 April 2008, Plaintiff filed a motion seeking the entry of an order striking portions of the answers filed by all of the Defendants on the grounds that they contained "irrelevant, immaterial, impertinent and scandalous material in violation of Rule 12(f) of the Rules of Civil Procedure." On the same date, Plaintiff filed a motion seeking to have Defendants' motion for judgment on the pleadings converted to a motion for summary judgment on the grounds that Defendants' motion constituted an effort to obtain, "in essence, summary judgment without Plaintiff's ability to conduct discovery and impeach evidence."

On 14 May 2008, the trial court entered an order striking Plaintiff's notice of *lis pendens, nunc pro tunc.* On 20 May 2008, Plaintiff noted an appeal to this Court from the trial court's order striking the notice of *lis pendens* and filed a motion requesting a stay of the proceedings until his interlocutory appeal from the trial court's order striking his notice of *lis pendens* and an administrative proceeding in which he had challenged the LGC's approval of the County's request for authorization to use COPS financing had been resolved. On 23 May 2008, Defendants filed a response to Plaintiff's request for a stay and Plaintiff filed replies to Defendants' counterclaims.

On 29 May 2008, a hearing on various motions was held before the trial court. On 5 June 2008, the trial court entered orders denying Plaintiff's stay motion, granting in part and denying in part Plaintiff's motion to strike various items from Defendants' answers and counterclaims, and requiring Defendants to refile their answers and counterclaims in such a manner as to omit the stricken materials. On 11 June 2008, Plaintiff noted an appeal to this Court from the trial court's orders denying his request for a stay and granting in part and denying in part his motion to strike. Although Plaintiff sought the issuance of a temporary stay and a writ of supersedeas in the hopes of staying further proceedings at the trial level pending appeal, his efforts to obtain such relief from this Court were unsuccessful.

On 16 June 2008, Defendants filed amended answers and counterclaims in accordance with the trial court's 9 June 2008 order. On 23 June 2008, Plaintiff filed a motion to strike certain portions of the amended answers and counterclaims filed by Defendants. On 30 June 2008, Plaintiff filed replies to Defendants' amended counterclaims. On 25 July 2008, Plaintiff filed a motion seeking the entry of an order allowing him to amend his complaint for the purpose of restating his fifth claim for relief so as to allege that, based on Judge Morrison's decision granting summary judgment in his favor, the LGC's decision approving the County's application for authorization to issue COPS was "fatally flawed and void" and that "Plaintiff is entitled to a permanent injunction barring" payments under the COPS financing contracts. On 31 July 2008, Defendants filed a response in opposition to Plaintiff's amendment motion. On 21 August 2008, Plaintiff amended his amendment motion by attaching a revised version of his amended fifth claim for relief which set out in more detail the proceedings which Plaintiff anticipated would occur before the

LGC in the aftermath of Judge Morrison's decision. On 29 August 2008, Defendants filed answers to the proposed amendment to Plaintiff's complaint.

At the 29 August 2008 hearing, the trial court refused to reconsider its decision to deny Plaintiff's motion to strike Exhibit Nos. 7 and 9(a) to the answer and counterclaims filed by the County and the Facilities Corporation. After making this determination, the trial court heard argument from the parties concerning pending motions. That same day, the trial court granted Plaintiff's motion to amend his complaint. That same date, the trial court entered an order granting Defendants' motion for judgment on the pleadings with respect to the first four claims for relief asserted in Plaintiff's complaint and dismissing the fifth claim for relief asserted in Plaintiff's complaint for lack of subject matter jurisdiction. On 23 September 2008, the trial court entered an order denying Plaintiff's motion to convert Defendants' motion for judgment on the pleadings into a motion for summary judgment and an order denying Plaintiff's motion for preliminary injunction.

On 10 October 2008, Plaintiff gave notice of appeal to this Court from the trial court's 15 September 2008 order granting Defendant's motion for judgment on the pleadings with respect to the first four claims for relief asserted in Plaintiff's complaint and dismissing the fifth claim for relief asserted in Plaintiff's complaint for lack of subject matter jurisdiction, the trial court's 23 September 2008 order denying Plaintiff's motion to convert Defendants' motion for judgment on the pleadings to a motion for summary judgment, and the trial court's 23 September 2008 order denying Plaintiff's motion for a preliminary injunction. On 26 September 2008 and 20 October 2008, respectively, Defendants requested this Court to dismiss Plaintiff's appeals from the trial court's orders striking his notice of *lis pendens* and denying his stay motion on the grounds that the orders in question were unappealable interlocutory orders. On 27 October 2008 and 18 November 2008, this Court granted Defendant's dismissal motions. On 7 January 2009, the trial court, with the consent of all parties, entered an order finding that the orders that it entered on 15 September 2008 and 23 September 2008 constituted final judgments with respect to all claims asserted by Plaintiff; that "the Counterclaims of each of the Defendants have not yet been resolved and remain pending;" that there was "no just reason to delay Plaintiff's appeal[s] from" the 15 September 2008 and 23 September 2008 orders; and that the 15 September 2008 and 23 September 2008 orders were

"subject to immediate appeal pursuant to" N.C. Gen. Stat. § 1A-1, Rule 54(b).[3]

## II. Legal Analysis

## A. Motion to Strike

[1] On appeal, Plaintiff challenges the trial court's denial of his motions to strike Exhibit No. 7 attached to the answers and counterclaims filed by the County and the Facilities Corporation. Exhibit No. 7 consists of documents relating to the sale of a tract of property in the vicinity of the Assemblage by the County to the North Carolina Department of Transportation. In challenging the trial court's ruling, Plaintiff argues that, since the "[p]arties are not permitted to 'prove their case' at the pleading stage by attaching evidentiary materials to their pleadings . . . prior to discovery, impeachment and rebuttal," the trial court erred by refusing to strike Exhibit No. 7. We do not find Plaintiff's contention persuasive.

> Rule 12(f) of the North Carolina Rules of Civil Procedure, allows the court to strike from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter. *Carpenter*, 189 N.C. App. at 759, 659 S.E.2d at 765 (quoting N.C.R. Civ. P. 12(f) (2005)).

> Rule 12(f) motions are addressed to the sound discretion of the trial court and its ruling will not be disturbed absent an abuse of discretion. *Id.* (citation and internal quotations omitted). Matter should not be stricken unless it has no possible bearing upon the litigation. If there is any question as to whether an issue may arise, the motion [to strike] should be denied. *Id.*, 659 S.E.2d at 766 (quoting *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 316, 248 S.E.2d 103, 108, *disc. review denied*, 295 N.C. 735, 249 S.E.2d 804 (1978)).

*Reese I*, —— N.C. App. at ——, 676 S.E.2d at 492. (internal quotations omitted). As a result, the issue before the Court in connection with Plaintiff's challenge to the denial of his motion to strike Exhibit No. 7 is whether the trial court abused its discretion by concluding that the material in question had some "possible bearing upon the litigation."

---

3. Although the trial court's 15 September 2008 order granting judgment on the pleadings in favor of Defendants with respect to the first four claims for relief set forth in Plaintiff's complaint and dismissing the fifth claim for relief set forth in Plaintiff's complaint for lack of subject matter jurisdiction are clearly final judgments with respect to Plaintiff's claims, the same cannot be said with respect to the other orders referenced in the trial court's certification order.

According to the allegations of Plaintiff's complaint:

25. On November 7, 2007, the Board authorized the sale of a parcel of land owned by Defendant County and located in close proximity to the Assemblage to the North Carolina Department of Transportation (the "NCDOT Parcel") for a purchase price of $1,650,000, or, upon information and belief, approximately $78.45 per square foot.

26. According to the November 7, 2007, resolution of the Board authorizing the sale, the sales price of $1,650,000 ($78.45 per square foot) for the NCDOT parcel was deemed to be "full and fair consideration for the parcel as determined by the Mecklenburg County Real Estate Services Department.

27. Upon information and belief, the NCDOT parcel is located near the Assemblage and is similarly situated in terms of location, access and other valuation factors.

28. Based on the sales price of the NCDOT parcel and the determination of the Mecklenburg County Real Estate Services Department, "full and fair consideration" for the Assemblage should be approximately $78.45 per square foot.

Based upon these allegations, Plaintiff further alleged that "Defendant County, pursuant to the Assemblage Purchase Resolution and related Assemblage Contract, has agreed to pay a purchase price equal to approximately 27% (or $4,024,988) more than the actual value of the Assemblage as established by the County's sale of the NCDOT parcel" and that, "[u]pon information and belief, the purchase price approved by the Assemblage Purchase Resolution has no relation to the true fair market value of the Assemblage but is rather a contrived amount designed solely to accomplish a *de facto* 'swap' of the Assemblage for the properties to be acquired by Brooklyn Village, LLC from the County pursuant to the Brooklyn Village Contract." As a result, the first claim for relief alleged in Plaintiff's complaint hinges on the assumption that the County should have paid the same purchase price for the Assemblage that it paid for the NCDOT parcel and that its failure to do so indicated that the County acted unlawfully when it purchased the Assemblage.

In responding to the first claim for relief asserted in Plaintiff's complaint, the County and Facilities Corporation attached the proposed action item considered by the County Commission and the signed resolution authorizing the sale of the NCDOT parcel from the

County to the NCDOT as Exhibit No. 7 to their answer and counter-claims. According to the materials contained in Exhibit No. 7, while certain County-owned land had been sold to the NCDOT at $78.45 per square foot, the remainder of the property in question had been val-ued at $95.00 per square foot, resulting in a 5% differential rather than the 27% differential cited in Plaintiff's complaint.

Plaintiff's challenge to the trial court's refusal to strike Exhibit No. 7 is predicated on his contention that, since he only referred to the $1,650,000 aggregate and $78.50 per square foot purchase price in his complaint, the additional information contained in Exhibit No. 7 concerning property retained by the County was not responsive to the allegations of his complaint and was, for that reason, irrelevant. Contrary to Plaintiff's argument, however, he specifically referenced the County Commission's decision to sell the parcel to NCDOT. As part of that process, he specifically mentioned the 7 November 2007 resolution authorizing that action in his complaint. Having included those allegations in his complaint, we believe that the County and the Facilities Corporation were entitled to attach the documentation evincing the County's approval of that transaction to their answer and counterclaims. Given the allegations of Plaintiff's complaint, the deci-sions on which he relies, such as *George Shinn Sports, Inc., v. Bahakel Sports, Inc.*, 99 N.C. App. 481, 393 S.E.2d 580 (1990), *disc. review denied*, 328 N.C. 571, 403 S.E.2d 511 (1991), and *Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 652 S.E.2d 701 (2007), are inapposite. Instead, as Defendants suggest, the proper resolution of the present issue is controlled by our prior decision in *Reese II*, in which we held that Plaintiff's decision to reference a particular agree-ment in his complaint allowed Defendants to append the attachments to that agreement to their answer on the grounds that it would be "disingenuous for plaintiff to argue that since he did not specifically refer to every attachment in his complaint that they were not properly before the trial court upon defendant's Rule 12(c) motion." *Reese II*, ––– N.C. App. at –––, 676 S.E.2d at 496. As a result, we conclude that the trial court did not abuse its discretion by denying Plaintiff's motion to strike Exhibit No. 7.

### B. Judgment on the Pleadings

Next, we address Plaintiff's challenge to the trial court's decision to enter judgment on the pleadings with respect to the first, second, third, and fourth claims for relief asserted in his complaint and to dis-miss the fifth claim for relief asserted in his complaint for lack of jurisdiction. A careful review of the pleadings in light of the applica-

**REESE v. MECKLENBURG CNTY., N.C.**

[204 N.C. App. 410 (2010)]

ble law indicates that the trial court's rulings with respect to these issues should be affirmed.

Judgment on the pleadings is "appropriate when all the material allegations of fact are admitted in the pleadings and only questions of law remain. Judgments on the pleadings are disfavored in law, and the trial court must view the facts and permissible inferences in the light most favorable to the non-moving party." *Shehan v. Gaston Cty.*, 190 N.C. App. 803, 806, 661 S.E.2d 300, 303 (2008) (citing *Carpenter v. Carpenter*, 189 N.C. App. 755, 757, 659 S.E.2d 762, 765 (2008)). In deciding a motion for judgment on the pleadings, the trial court looks solely to the pleadings, *Wilson v. Development Co.*, 276 N.C. 198, 206, 171 S.E.2d 873, 878 (1970), and may only consider facts that have been properly pled and documents attached to or referred to in the pleadings. *See Wilson*, 276 N.C. at 206, 171 S.E.2d at 878-79 (citations omitted). "[W]here a source document, attached as an exhibit, is referred to by the pleadings, and its terms are inconsistent with the language of the pleading[s], the terms of the source document control." *Reese I*, —— N.C. App. at ——, 676 S.E.2d at 489. This Court reviews a trial court's order granting a motion for judgment on the pleadings on a *de novo* basis. *Carpenter*, 189 N.C. App. at 757, 659 S.E.2d at 764. We will now examine the trial court's order in light of these basic legal principles.

## 1. First Claim for Relief

[2] In his first claim for relief, Plaintiff sought a determination that the resolution authorizing the purchase of property from 300 South Church Street and RBC was invalid on the grounds that "Defendant County . . . ha[d] agreed to pay a purchase price equal to approximately 27% ($4,024,988) more than the actual value of the Assemblage;" that "the purchase price approved by the Assemblage Purchase Resolution has no relation to the true fair market value of the Assemblage[,] but is rather a contrived amount designed solely to accomplish a *de facto* 'swap' of the Assemblage for the properties to be acquired by Brooklyn Village, LLC from the County pursuant to the Brooklyn Village Contract;" and that the Assemblage Purchase Resolution should be declared unlawful, nullified, and set aside "on the grounds that the inflated purchase price is excessive and constitutes a manifest abuse of discretion by Defendant County and its Board." In its order granting judgment on the pleadings in favor of Defendants with respect to this claim for relief, the trial court held that, "[a]s a matter of law, and standing alone, a 27% differential in

price in relation to another isolated transaction is not so excessive as to demonstrate the manifest abuse of discretion necessary to set aside a decision of a governmental body;" that "the Complaint is devoid of any allegation of corruption or self-dealing, payments to an insider or someone associated with the Board, or any other allegation that the price differential was the result of corruption or a manifest disregard of the Board's public duty;" that, according to Exhibit No. 7 attached to the amended answer and counterclaims filed by the County and Facilities Corporation, "the land referred to by the Plaintiff was the sale of only a *portion* of the subject parcel;" that "the entire parcel was estimated to have an appraised value of $95 per square foot;" that "the price differential for the [Assemblage] is approximately 5% higher than land owned by the County as appraised at an earlier time;" and that "the formal pleadings reveal that, as a matter of law, the Board was within its discretion in accepting the purchase price set forth in the resolutions, and, in light of the uncontradicted facts appearing on the face of the pleadings, there are no allegations sufficient to establish the manifest abuse of discretion necessary to set aside the action of a public body." Although Plaintiff contends that the trial court utilized an incorrect "corruption and self-dealing" standard in reviewing the actions of the relevant local officials instead of determining whether they acted "(1) arbitrarily or capriciously or in bad faith, or (2) in disregard of the law" and argues that "[a] lack of due diligence in the acquisition of public property is evidence of arbitrary and capricious action," we conclude that the trial court did not err in granting judgment on the pleadings in favor of Defendants with respect to Plaintiff's first claim for relief.

North Carolina law recognizes a strong presumption that governmental bodies act in good faith. *Painter v. Wake County Board of Education*, 288 N.C. 165, 178, 217 S.E.2d 650, 658 (1975). "The courts may not interfere with the exercise of the discretionary powers of local administrative boards for the public welfare 'unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of their discretion.' " *Mullen v. Town of Louisburg*, 225 N.C. 53, 60, 33 S.E.2d 484, 489 (1945). A "manifest abuse of discretion" must be "so clearly unreasonable as to amount to an oppress[ion]," *James v. Nash Cty. General Hospital*, 1 N.C. App. 33, 34-35, 159 S.E.2d 252, 253 (1968) (quoting *Mullen*, 225 N.C. at 60, 33 S.E.2d at 489 (1945)); or amount to action "in wanton disregard of the public good." *Barbour v. Carteret County*, 255 N.C. 171, 181, 120 S.E.2d 448, 451 (1961). If a party contends that public officials have failed to act in good faith, then that party has the burden of overcoming the pre-

sumption by competent and substantial evidence. *Painter*, 288 N.C. at 178, 217 S.E.2d at 658. The statement of a claim for relief set forth in a party's pleading must "satisfy the requirements of the substantive law which gives rise to the pleading[]." *Alamance Cty. v. N.C. Dept. of Human Resources*, 58 N.C. App. 748, 750, 294 S.E.2d 377, 378 (1982) (citations omitted). "A 'mere assertion of a grievance' against a governmental entity is insufficient to state a claim for relief." *Reese I*, —— N.C. App. at ——, 676 S.E.2d at 489 (quoting *Alamance Cty.*, 58 N.C. App. at 750, 294 S.E.2d 378).

A review of the trial court's order reveals that its reference to "allegation[s] of corruption or self-dealing" was merely an example of the type of "palpable abuse of power" that could give rise to a conclusion that public officials "acted to enrich themselves" or acted in "wanton disregard of the public good." *See Reese II*, —— N.C. App. at ——, 676 S.E.2d at 498. In concluding that Defendants were entitled to judgment on the pleadings with respect to the first claim for relief asserted in Plaintiff's complaint, the trial court clearly stated that Plaintiff had failed to set forth "allegations sufficient to establish the manifest abuse of discretion necessary to set aside the action of a public body." As a result, the trial court applied the correct legal standard in ruling on Defendants' motion for judgment on the pleadings. *Alamance Cty.*, 58 N.C. App. at 749, 294 S.E.2d at 378 (stating that the courts have no authority to intervene in discretionary actions by governmental bodies "in the absence of fraud, manifest abuse of discretion or conduct in excess of lawful authority").

Furthermore, we agree with the trial court that Plaintiff failed to allege facts "sufficient to establish the manifest abuse of discretion necessary to set aside the action of a public body" in his first claim for relief. In seeking to persuade us to reach a contrary result, Plaintiff relies on the Supreme Court's decision in *Barbour*.[4] In *Barbour*, the Carteret County Commission agreed to purchase a certain tract of property for $75,000 without "having said property appraised and its value determined." The purchase price was alleged to be more than twice the property's value. *Barbour*, 255 N.C. at 182, 120 S.E.2d at 451. On appeal, the Supreme Court reversed the trial court's decision to dismiss a challenge to the County Commission's decision on the grounds that "[s]uch conduct [did] not comport with

_____

4. Although Plaintiff also cites *Bowles v. Fayetteville Graded Schools*, 211 N.C. 36, 188 S.E. 615 (1936), for the proposition that courts should intervene where there is "allegation and proof that [a local board of education] failed to follow proper procedures in the sale of school property to a private party," Plaintiff has not alleged any failure on the part of the County to follow proper procedures in his first claim for relief.

the duty which public officials owe those they represent" and that the commissioner's actions manifested bad faith. *Id.* at 182, 120 S.E.2d at 452. In this case, unlike *Barbour*, the County had the property appraised prior to deciding to purchase it and acted in compliance with established guidelines for obtaining approval of the necessary financing. In addition, the only support provided in Plaintiff's complaint for his contention that the price paid for the Assemblage was too high related to the sale of the NCDOT parcel. Although the parties disagreed about whether the amount paid for the Assemblage was 5% or 27% higher than the price paid for the NCDOT parcel, we agree with the trial court that neither differential, standing alone, is sufficient to support a determination that the County Commission manifestly abused its discretion in deciding to purchase the Assemblage at the stated price. As a result, unlike the situation in *Barbour*, Plaintiff's "excessive price" allegations do not suffice to save his first claim for relief from dismissal.

Finally, Plaintiff alleges that the purchase price was a "contrived amount designed to solely accomplish a *de facto* 'swap' of the Assemblage for properties to be acquired by Brooklyn Village, LLC from the County pursuant to the Brooklyn Village Contract." Once again, such an allegation does not suffice to state a valid claim for relief. Simply put, Plaintiff has provided no factual support for its "contrived amount" allegation; in the absence of such supportive allegations, this portion of the first cause of action set out in Plaintiff's complaint is insufficient to salvage Plaintiff's claim in light of the strong presumption of lawfulness that attaches to the actions of public bodies. Thus, for all of these reasons, we conclude that the trial court did not err by granting judgment on the pleadings in favor of Defendants with respect to the first claim for relief set out in Plaintiff's complaint.

## 2. Second Claim for Relief

[3] In his second claim for relief, Plaintiff alleges that "the Assemblage is being acquired . . . for use as a public park;" that Defendant County already owns a 7.8 acre tract of land . . . across Mint Street from the Assemblage which was acquired by Defendant County . . . for use as a public park;" that "the Existing Park Site is suitable in every way for development as a permanent public park;" that, "should Defendant County proceed with the development of the Existing Park Site as a public park, the purchase of the Assemblage would be unnecessary and the expenditure of approximately $19,000,000 in County funds could be avoided;" and that "Defendant

**REESE v. MECKLENBURG CNTY., N.C.**

[204 N.C. App. 410 (2010)]

County could develop [the Existing Park Site] as a public park without the borrowing and/or expenditure of additional public funds beyond the proceeds of the 2004 park bonds already allocated and set aside for such use." Based on these allegations, Plaintiff sought the entry of an order nullifying, setting aside, and enjoining the Assemblage Contract "on the grounds that the purchase which is the subject of such contract is redundant, unnecessary and a material waste of $19,000,000 in public funds critically needed for other public purposes, and a manifest abuse of discretion by Defendant County and the Board." In granting Defendants' motion for judgment on the pleadings directed toward this claim for relief, the trial court noted that "[t]he acquisition of [the Assemblage] is part of an overall plan for the development of the Center City of Charlotte adopted by the County and the City for the purposes of economic development, urban revitalization, community development and land use planning;" that "[t]he Board acted within its discretion and judgment in the development, location, and placement of public parks and recreation facilities in finding that [the Assemblage] was more suitable for an urban park;" that "[t]he Plaintiff's allegation that the acquisition of [the Assemblage] is 'unnecessary' does not establish a manifest abuse of discretion;" and that "the formal pleadings, when viewed in their entirety, reveal that, as a matter of law, the Board was within its discretion in determining that [the Assemblage] was suitable for a public park and in choosing to dispose of other property which it owned . . . through the lease arrangement with Knights Baseball, all pursuant to an adopted plan for economic development, urban revitalization, community development and land use" so that "there are no allegations in light of the uncontradicted facts of the pleadings that establish the type of manifest abuse of discretion necessary to set aside the action of the public body." On appeal, Plaintiff argues that the trial court erred by granting judgment on the pleadings with respect to his second claim for relief since "[a]llegations of wrongful borrowing and/or appropriation of public funds [are] sufficient to withstand a motion for judgment on the pleadings as such action may exhibit either unlawful or arbitrary and capricious conduct." Once again, we conclude that Plaintiff's argument lacks merit.

The only support that Plaintiff provides in support of his contention that an allegation that "wrongful borrowing and/or appropriation of public funds is sufficient to withstand a motion for judgments on the pleadings" is a citation to the Supreme Court's decision in *Goldston v. State*, 361 N.C. 26, 637 S.E.2d 876 (2006), *disc. review denied and appeal dismissed*, 363 N.C. 802, —— S.E.2d —— (2010).

*Goldston* differs from this case in that the *Goldston* plaintiffs alleged a misuse of public funds in violation of state statute. In this case, Plaintiff is challenging the wisdom of the County's decision to purchase new land for use as a public park rather than using an existing park site for that purpose. In the absence of any factual allegations over and above the contention that the purchase of the Assemblage for use as a public park was "redundant, unnecessary, and a material waste of $19,000,000," the second claim for relief set out in Plaintiff's complaint simply fails to allege a manifest abuse of discretion on the part of the County. *Alamance County*, 58 N.C. App. at 750, 294 S.E.2d at 378. As a result, the trial court correctly granted judgment on the pleadings in favor of Defendants on Plaintiff's second claim for relief.

### 3. Fourth Claim for Relief

**[4]** In his fourth claim for relief, Plaintiff challenged the approval of the Resolution Authorizing and Approving an Installment Financing (COPS Financing Resolution) on 18 December 2007. According to the allegations of Plaintiff's fourth claim for relief, the project to be funded by the COPS Financing Resolution was the property to be purchased pursuant to the Assemblage Purchase Resolution.[5] Although Plaintiff alleged that the County Commission found that the proposed COPS Financing was " 'necessary and expedient' " for the County, "was preferable to bond issues . . . for the same purpose," that "[t]he sums estimated to fall due under the financing contracts underlying the COPS Financing were adequate and not excessive for the proposed purpose," and that "[a]ny increase in taxes to pay the obligation would not be 'excessive,' " he contended that these determinations were "erroneous and not supported by competent facts and evidence known to the Board at the time of the adoption" of the resolution. Among other things, Plaintiff alleged that the County already owned land in the vicinity of the Assemblage available for use as a public park, rendering the borrowing of an additional $19,000,000 for the purchase of park land neither "necessary nor expedient." Similarly, Plaintiff alleged that providing funds for use by the Charlotte-Mecklenburg Board of Education was not "necessary or expedient" since the purpose of those funds was to compensate the Board of Education for transferring land to the County in order to facilitate "a private development to be known as Brooklyn Village." Finally, Plaintiff alleged that the Board had "failed to consider whether

---

5. As we understand the record, the proceeds derived from the COPS Financing were to be used for a number of purposes other than facilitating the transactions that are under consideration in this case.

issuance of bonds would be preferable to the COPS Financing;" that "the price to be paid for the Assemblage parcels is inflated and excessive and an abuse of discretion of the Board;" that "the creation of additional debt pursuant to the COPS Financing Resolution will violate the County's own prescribed debt management procedures and policies;" that "the record before the Board and disclosed in the Application does not prove or reasonably support the conclusion that any increase in taxes necessary to pay the obligations created by the COPS Financing will not be excessive;" and that, for these reasons, "the COPS Financing Resolution is unlawful and constitutes a manifest abuse of discretion of the Board" and "should be declared null and void, unlawful and should be set aside and rendered invalid." In granting Defendants' motion for judgment on the pleadings with respect to the fourth claim for relief, the trial court stated that "[t]he resolution authorizing the County to seek COPS funding contains specific findings that such financing was necessary and expedient, that it was preferable to bond issues under current circumstances facing the County, and that the County's debt management procedures are good and are managed in strict compliance with the law." The trial court also noted that "Plaintiff's allegations, in the face of these findings, are merely conclusory and do not allege the facts necessary to establish a manifest abuse of discretion by the County," particularly given that "[t]he decision on how to structure a County's debt—through the issuance of bonds of COPS—is peculiarly within the discretion of the County and Plaintiff's allegation that bonds are preferable, without more to demonstrate why they are preferable and why these facts make the County's decision a manifest abuse of discretion, is insufficient." Once again, we conclude that the trial court correctly granted judgment on the pleadings in favor of Defendants with respect to Plaintiff's fourth claim for relief.[6]

On appeal, Plaintiff contends that the trial court erred in granting judgment on the pleadings in favor of Defendants with respect to the fourth claim for relief because the relevant portions of the complaint alleged that "the COPS financing exceeded the County's debt limit ratios" and because he has alleged "numerous facts that call into question the validity and accuracy of the 'findings' in the Resolution." In support of the first of these two arguments, Plaintiff cites *Robins v. Town of Hillsborough*, 361 N.C. 193, 639 S.E.2d 421 (2007), for the

6. At trial and on appeal, Plaintiff acknowledges that the issue of whether the LGC should have approved the County's application for authorization to engage in COPS financing must be decided through the administrative review process and is not properly before the Court in this case.

proposition that "the failure of a local governmental unit to follow its own adopted procedures renders the actions of such unit void." Although the Supreme Court did state in *Robins* that "this Court has held town boards to their own rules of procedure," 361 N.C. at 198, 639 S.E.2d at 424, the record in this case provides no indication that the County debt management policies and procedures upon which Plaintiff relies are anything other than policy-based guidelines. Furthermore, although Plaintiff has alleged a series of reasons why he disagrees with the factual predicate upon which the County Commission based its decision to apply for approval of COPS financing, the "facts" upon which he relies represent, at bottom, nothing more than a policy-based disagreement with the Board's decision rather than a demonstration that the Board manifestly abused its discretion. Were we to allow Plaintiff to proceed to trial on the basis of allegations such as those set forth in his fourth claim for relief, we would have effectively eviscerated the rule providing that " 'a mere assertion of a grievance' against a governmental entity is insufficient to state a claim for relief." *Reese I*, —— N.C. App. at ——, 676 S.E.2d at 489. As a result, the trial court correctly granted judgment on the pleadings in favor of Defendants with respect to Plaintiff's fourth claim for relief.

### 4. Third Claim for Relief

[5] In his third claim for relief, Plaintiff alleged that, on 4 December 2007, "the Board adopted that certain Park Land Acquisition Capital Project Ordinance appropriating the sum of $19,000,000 for the purpose of providing funds for the acquisition of land for an urban park facility;" that "the proposed purchase by the County of the Assemblage is unlawful, unauthorized and a manifest abuse of discretion" for the reasons set forth in the first and second claims for relief; that "[t]he Park Land Ordinance anticipates that funds to reimburse the appropriations would be made available from the proceeds of installment financing during the 2008 fiscal year;" that, as alleged in the fourth claim for relief, "the anticipated funding is contrary to the standards established by statute for such financing" so that "the funds anticipated from the installment financing will not be available to reimburse Defendant County for any expenditures made pursuant to the Park Land Ordinance;" and that, "[s]ince the Park Land Ordinance is unlawful and since the source of reimbursement is also unlawful," the Park Land Ordinance should be nullified and set aside. The trial court granted Defendants' motion for judgment on the pleadings with respect to the third claim for relief on the grounds that,

"[b]ecause this Court has found that Plaintiff's first two claims fail as a matter of law in light of the totality of the pleadings, this Third Claim fails as well." Similarly, having concluded that the trial court properly granted judgment on the pleadings in favor of Defendants with respect to the first, second, and fourth claims for relief asserted in Plaintiff's complaint, we conclude that the trial court did not err by granting judgment on the pleadings with respect to the third claim for relief asserted in Plaintiff's complaint as well.

### 5. Fifth Claim for Relief

[6]  Finally, Plaintiff alleged in his amended fifth claim for relief that, "since the [LGC] certificate approving the Application is fatally flawed and void, it is unlawful for any officer, employer or agent of Defendant to make any payment under the COPS Financing contracts and Plaintiff is entitled to permanent injunction barring such payments." The trial court found that Plaintiff's pleading "reveals on its face that the Plaintiff is vigorously pursuing his administrative remedies" and that "the Plaintiff has not exhausted his remedies," thereby depriving the trial court of the "subject matter jurisdiction to consider" Plaintiff's fifth claim for relief. As a result, the trial court dismissed Plaintiff's fifth claim for relief.

On appeal, Plaintiff contends that the trial court erred by dismissing the fifth claim for relief on the grounds that this action and the related administrative litigation in which he is also involved address two different issues. On the one hand, Plaintiff contends that the administrative litigation involves "the validity of the approval of the Application and issuance of the approval certificate by the LGC." On the other hand, Plaintiff contends that this case involves a challenge to "the validity of the COPS contracts under N.C. Gen. Stat. § 159-149." Although Plaintiff concedes that "the resolution of the Administrative Appeal will establish a critical fact in the resolution of the Fifth Claim" and that his fifth claim for relief will fail in the event that "the LGC certificate is determined in the Administrative Appeal to be valid," Plaintiff contends that the trial court should have "granted Plaintiff's motion to stay this action pending final resolution of the Administrative Appeal" rather than dismissing his fifth claim for relief.

A careful analysis of the allegations of Plaintiff's amended fifth claim for relief indicates that it is predicated upon allegations that, "since the certificate of the [LGC] approving the Application is fatally flawed and void, it is unlawful for any officer, employer or agent of

Defendant to make any payment under the COPS Financing contracts" and that, "[b]ased upon the reasoned analysis and decision of Judge Morrison and the presumption of correctness of the ALJ decision, it is likely that Plaintiff will prevail on the merits of this Fifth Claim by (1) adoption by the Commission of the ALJ Decision requiring a review of the Application by the full Commission *de novo* pursuant to N.C. Gen. Stat. § 159-4(b), and (2) the subsequent denial of the Application by the full Commission on the grounds that the information contained in the application is insufficient to support approval of the Application in accordance with the standards set out in N.C. Gen. Stat. § 159-151(b)." In light of these allegations, Plaintiff contends that "the officers, employees and agents" of the County should be enjoined from "mak[ing] payments under the COPS Financing contracts." We are unable to read these allegations to constitute anything other than a prediction that Plaintiff will prevail in the related administrative litigation and that, given his likely victory in that forum, the trial court should enjoin the County from making payments under the COPS financing contracts. In view of the fact that the factual prerequisite for the maintenance of Plaintiff's fifth claim for relief had not occurred and might never occur and since Plaintiff appears to concede that the correct forum for consideration of the appropriateness of the LGC's decision to approve the County's application for approval of COPS financing is in the administrative arena, we conclude that the trial court did not, in fact, have subject matter jurisdiction over Plaintiff's fifth claim for relief and properly dismissed it. *Vass v. Board of Trustees*, 324 N.C. 402, 408-09, 379 S.E.2d 26, 30 (1989) (holding that a trial court lacked subject matter jurisdiction to conduct a judicial review proceeding under the Administrative Procedures Act where "the plaintiff had not exhausted the administrative remedies available to him under the Act"). Thus, the trial court did not err by dismissing Plaintiff's amended fifth claim for relief for lack of subject matter jurisdiction.[7]

## C.  Plaintiff's Additional Arguments

In addition to the arguments discussed above, Plaintiff contends that the trial court erred by striking the notice of *lis pendens*, granting judgment on the pleadings for 300 South Church Street and RBC for additional reasons not discussed above, and denying his motion to convert Defendants' motion for judgment on the pleadings to a mo-

---

  7. Plaintiff's reliance on *Nello L. Teer Co., Inc. v. Jones Bros., Inc.*, 182 N.C. App. 300, 641 S.E.2d 832 (2007), is misplaced given that the issue of the trial court's subject matter jurisdiction was not at issue in that case.

tion for summary judgment. Although we believe that Defendants' contention that Plaintiff has not properly taken an appeal from the trial court's orders that address these issues may well have merit, given our conclusion that judgment on the pleadings was proper in favor of Defendants County and Facilities Corporation, we believe that Plaintiff's additional arguments have been rendered moot to the extent that they are properly before us. For that reason, we decline to address Plaintiff's remaining arguments on appeal.

### III.  Conclusion

As a result, we conclude that Plaintiff has failed to demonstrate that the trial court committed any error of law in the orders which he has challenged on appeal. Thus, the trial court's orders should be, and hereby are, affirmed.

Affirmed.

Chief Judge MARTIN and Judge JACKSON concur.