WNC Holdings, LLC v. Alliance Bank & Trust Co., 2012 NCBC 50.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 9668

WNC HOLDINGS, LLC, MASON
VENABLE and HAROLD KEE,

        Plaintiffs,

v.

ALLIANCE BANK & TRUST
COMPANY, EDGAR W. TANNER,
JR., TANNER REAL ESTATE
SERVICES, INC. and DANIEL C.
AYSCUE, Trustee under Deeds of
Trust,

        Defendants.

**ORDER & OPINION**

*The Odom Firm, PLLC by Thomas L. Odom, Jr. and David Murray for Plaintiffs WNC Holdings, LLC, Mason Venable, and Harold Kee.*

*James, McElroy & Diehl, P.A. by Jared E. Gardner for Plaintiff WNC Holdings, LLC.*

*Cranfill Sumner & Hartzog, LLP by Samuel H. Poole, Jr. and Todd King for Defendants Edgar W. Tanner, Jr. and Tanner Real Estate Services, Inc.*

*Gray, Layton, Kersh, Solomon, Furr & Smith, P.A by Michael Carpenter for Defendants Alliance Bank & Trust Company and Daniel C. Ayscue.*

Murphy, Judge.

{1}    **THIS MATTER** is before the Court upon Defendants Alliance Bank & Trust Company ("Alliance Bank") and Daniel C. Ayscue's ("Ayscue") (collectively "Alliance") Motion to Dismiss for Improper Venue pursuant to North Carolina General Statute section 1-83(1) and Rule 12(b)(3) of the North Carolina Rules of Civil Procedure ("Alliance Motion I"), Motion to Change Venue pursuant to North Carolina General Statute Section 1-83(2) ("Alliance Motion II"), and Motion to Dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) ("Alliance Motion III"); Defendants Edgar W. Tanner Jr. and Tanner Real Estate Services Inc.'s (collectively "Tanner") Motion to Dismiss Plaintiffs' Complaint pursuant to Rule

12(b)(6) ("Tanner Motion I"), Motion to Dismiss Co-Defendants' Cross-Claims pursuant to Rule 12(b)(6) ("Tanner Motion II"), and Motion for Judgment on the Pleadings for Co-Defendants' Cross-Claim Complaint pursuant to Rule 12(c) ("Tanner Motion III"); and Alliance and Tanner's Joint Motion for Change of Venue pursuant to Section 1-83(2) ("Defendants' Joint Motion").

{2}    After considering the Amended Complaint and the parties' motions and submissions, the Court **GRANTS** Alliance Motion I; finds Alliance Motion II and Defendants' Joint Motion moot; **GRANTS**, in part, and **DENIES**, in part, Alliance Motion III; and **GRANTS**, in part, and **DENIES**, in part, Tanner Motion I, II, and III.

I.

PROCEDURAL HISTORY

{3}    This action arose out of a 2006 land transaction in Rutherford County, North Carolina, and was filed in Mecklenburg County Superior Court on May 16, 2011. Plaintiffs sought a loan from Alliance Bank to purchase raw land and develop it into a residential subdivision. Alliance Bank's underwriting guidelines required an appraisal of the property's value before issuing a loan. Alliance Bank contracted with Defendant Tanner Real Estate Services, Inc. for a market value appraisal of the property. Plaintiffs allege that Tanner's appraisal was erroneously calculated, causing the property value to be exaggerated, and that Plaintiffs entered into loan agreements with Alliance Bank based on the inflated appraisal. Plaintiffs further allege that Alliance Bank discovered the error, did not inform Plaintiffs of the miscalculation, and used the bank's knowledge to obtain additional security interests from Plaintiffs in order to better position the bank as a creditor.

{4}    Plaintiffs brought claims against the bank and the appraiser for: preliminary injunction, negligent misrepresentation, negligence, breach of fiduciary duty, vicarious liability, fraud, breach of contract, breach of good faith and fair dealing, conversion, unfair and deceptive trade practices, punitive damages, rescission, and declaratory judgment. (Original Compl. ¶¶ 44–111.) Defendants failed to file a timely answer to the original Complaint and an entry of default was

entered on June 20, 2011. (Pls.' Resp. Alliance Mot. I 1.)

{5}     Motions to set aside the entry of default were filed by Tanner on July 1, 2011, and Alliance on July 7, 2011. (Tanner Defs.' Mot. to Set Aside Default 2; Alliance Defs.' Mot. to Set Aside Default 5; Pls.' Resp. Alliance Mot. I 1.) Judge Yvonne Mims Evans granted the motions on August 12, 2011, and ordered answers to be filed that day.

{6}     Alliance's Answer, filed on August 12, 2011, contained Alliance Motions I and II objecting to venue; counterclaims against Plaintiffs for breach of contract, breach of personal guarantees, fraud, and negligent misrepresentation; and cross-claims against co-Defendant Tanner for exoneration, indemnification, contribution, breach of contract, and negligence. (Alliance Ans. 10–12, 15–22, 23–25.) That same day, Alliance filed a notice of designation to the North Carolina Business Court. The case was designated as a mandatory complex business case on August 15, 2011, and assigned to this Court on August 19, 2011.

{7}     In compliance with Rule 17 of the General Rules of Practice and Procedure for the North Carolina Business Court, the parties jointly completed a Case Management Report ("CMR") on November 2, 2011. (Case Mgmt. Report 7.) In the CMR, Alliance objected to venue in Mecklenburg County, asserting venue was proper in Cleveland, Rutherford, or Gaston Counties. (Case Mgmt. Report 4–5.)

{8}     On November 17, 2011, this Court entered a Case Management Order ("CMO") acknowledging Alliance's objection to venue and instructing all motions to dismiss be filed on or before December 19, 2011. (Case Mgmt. Order 8–9.) The parties agreed to conduct pretrial motions in Mecklenburg County, but venue remained disputed. (Case Mgmt. Order 3.)

{9}     The parties were unable to resolve the venue objection before December 19, 2011 (Defs.' Jt. Mot. 1), and pursuant to the CMO and BCR 15.2, Defendants filed the aforementioned change of venue motions and supporting affidavits.

{10}    On February 9, 2012, after all the motions were fully briefed by the

parties, the Court conducted a hearing on the pending motions, including Alliance Motions I–III, Tanner Motion I–III, and Defendants' Joint Motion.

{11}    After the hearing, Plaintiffs filed an Amended Complaint on February 12, 2012 that further detailed Defendants' fiduciary relationship.

II.

FACTUAL BACKGROUND

{12}    The Court makes findings of fact in connection with the determination of proper venue pursuant to North Carolina General Statute section 1-83(1) and Rule 12(b)(3) of the North Carolina Rules of Civil Procedure. *See generally Johnson v. Hampton Indus.*, 83 N.C. App. 157, 158, 349 S.E.2d 332, 333 (1986).

{13}    Ordinarily, this Court does not make findings of fact in connection with motions to dismiss pursuant to Rule 12(b)(6), as such motions do "not present the merits, but only [determine] whether the merits may be reached," *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). For purposes of the Court's analysis of Defendants' Rule 12(b)(6) motions in its Order and Opinion, the Court recites only those facts from the pleadings that are relevant to the Court's legal determinations.

A.

FINDINGS OF FACT FOR PROPER VENUE

{14}    Plaintiffs Mason Venable ("Venable") and Harold Kee ("Kee") are residents of Cleveland County; Plaintiff WNC Holdings, LLC ("WNC"), is a North Carolina limited liability company with its principal place of business and registered agent in Cleveland County (collectively "Plaintiffs"). (Am. Compl. ¶¶ 1–3; Ayscue Aff. ¶ 7; Ayscue Ex. C.)

{15}    Defendants Ayscue and Edgar W. Tanner, Jr. are both residents of Cleveland County. (Am. Compl. ¶ 5; Ayscue Aff. ¶¶ 2, 11.) Defendant Tanner Real Estate Services, Inc. is a North Carolina corporation with its principal place of business, principal office, and registered agent in Rutherford County. (Am. Compl. ¶ 6; Ayscue Aff. ¶ 6; Ayscue Aff. Ex. B.) Defendant Alliance Bank and Trust Company is a North Carolina corporation with its principal place of business,

principal office, and registered agent in Gaston County, and does business in Mecklenburg County, North Carolina. (Ayscue Aff. ¶ 5; Ex. A; Am. Compl. ¶ 4.)

B.

PLAINTIFFS' ALLEGATIONS IN SUPPORT OF 12(B)(6) AND 12(C)

{16} In February 2006, WNC entered into a contract to purchase and develop as a residential subdivision 55.89 acres of undeveloped land in Rutherford County, North Carolina (the "Property"). Alliance Bank served as a lender and financial advisor to Plaintiff in the development of the Property. As part of Alliance's involvement, the Bank had a pro forma financial feasibility statement prepared for Plaintiffs in order to move the project forward and have Plaintiffs borrow the development money from the Bank. (Am. Compl. ¶ 8.)

{17} On March 22, 2006, Alliance contracted with Tanner, a licensed real estate appraiser, to prepare a market value appraisal ("Tanner Appraisal") of the Property. (Am. Compl. ¶¶ 5, 9; Ex. 1.)

{18} Tanner received $3,500 for the appraisal ($3,100 paid by WNC and $400 paid by Alliance Bank), but the payment was not conditioned upon the appraisal's results. (Am. Compl. ¶ 12.) The Tanner Appraisal's certification page states that Tanner employed the Uniform Standards of Professional Appraisal Practice ("USPAP") in developing the "analyses, opinions, and conclusions" contained in the appraisal. (Am. Compl. Ex. 3 at 26.) Plaintiffs allege that Tanner was bound by the USPAP's standards, and that he deviated from those standards by "failing to include the cost of the infrastructure and construction of improvements when using a projected cash flow analysis and then reducing to present value." (Am. Compl. ¶ 16.)

{19} The Tanner Appraisal valued the Property at $3,396,000. On April 19, 2006, Alliance Bank loaned Plaintiffs $400,000 to apply to the purchase price of the Property. (Am. Compl. ¶ 15, 21; Ex. 4.) After Plaintiffs purchased the Property, Alliance Bank filed a deed of trust on the Property with a future advance clause in the amount of $2,000,000. (Am. Compl. ¶¶ 21–23; Ex. 4; Ex. 6.) Plaintiffs allege that Alliance Bank failed to properly review the appraisal and, as a result, did not

discover its errors before extending credit to Plaintiffs. (Am. Compl. ¶ 18.) Plaintiffs contend they relied on the accuracy of the appraisal, the diligence of Alliance Bank in reviewing the appraisal, and would not have proceeded with the development project had Alliance Bank discovered and disclosed to Plaintiffs that "the appraisal was defective, erroneous and misleading." (Am. Compl. ¶¶ 19–20.)

{20} On June 14, 2006, Venable sent Alliance Bank's employee Matt Triplett ("Triplett") an e-mail detailing the expected costs for developing the Property. (Am. Compl. ¶ 24.) And, on July 17, 2006, Plaintiffs signed a promissory note for a $1,105,000 line of credit to complete Phase I of the development. (Am. Compl. ¶ 25; Ex. 7.) The loan was scheduled to mature on July 17, 2007, and was personally guaranteed by Venable and Kee. (Am. Compl. ¶ 25; Ex. 7.)

{21} On September 14, 2007, Plaintiffs executed another promissory note secured by a deed of trust dated April 19, 2006, for $603,000. (Am. Compl. ¶ 30.) Sometime between September 14 and December 10, 2007, Plaintiffs allege that Alliance discovered that the Tanner Appraisal was misleading, defective and erroneous, but despite their discovery, Alliance did not notify Plaintiffs that the Property was appraised above its actual market value. (Am. Compl. ¶ 31.) Unaware of the deficiencies in the Tanner Appraisal, on December 18, 2007, Plaintiffs signed a promissory note secured by the deed of trust dated April 19, 2006, for an additional $1,105,000. (Am. Compl. ¶ 36.) This loan was followed by another loan of $1,105,000 from Alliance Bank to Plaintiffs on July 30, 2008. (Am. Compl. ¶ 38.)

{22} Alliance Bank eventually contracted with Eugene Booth to conduct a second appraisal of the Property ("Booth Appraisal"). The Booth Appraisal stated the fair market value of the Property to be only $1,200,000 as of August 18, 2008. (Am. Compl. ¶ 39.)

{23} After receiving the Booth Appraisal, Plaintiffs allege that Alliance Bank demanded that WNC sign a renewal promissory note "for $603,000 and $1,105,000." (Am. Compl. ¶ 41.) As part of the renewal, WNC was required to maintain a checking account with Alliance Bank with a minimum balance of

$200,000. Alliance Bank did not provide any notice to Plaintiffs that the Tanner Appraisal was defective or that the Booth Appraisal reflected a fair market value that was significantly less than the Tanner Appraisal. (Am. Compl. ¶ 41.)

{24} Later in 2008, Triplett met with Plaintiffs and informed them that, because of the downturn in the economy, there was a problem with the Tanner Appraisal and that the Booth Appraisal showed the value of the Property to be $1,200,000. Triplett told Plaintiffs that Alliance Bank would not renew the loans in December unless Plaintiffs provided additional collateral. He then assured them that the project was still financially feasible and drew up another financial pro forma on their behalf. Alliance Bank did not indicate the problem with the Tanner Appraisal was that it was misleading, defective and erroneous. (Am. Compl. ¶ 42.)

{25} In February 2009, Plaintiffs consolidated the $603,000 and $1,105,000 promissory notes into a single note for $1,708,000 secured by a deed of trust on Plaintiff Venable's private real property, an assignment of Plaintiff Kee's life insurance policy, a deed of trust on another piece of real property owned by Plaintiff Kee, and unlimited personal guarantees from Plaintiffs Venable and Kee. (Am. Compl. ¶ 46.)

{26} Alliance Bank requested two commercial debt modification agreements from Plaintiffs in March and May 2010. (Am. Compl. ¶¶ 51–52.) After the second modification, Alliance Bank completed another internal Confirmation of Business Loan Approval document identifying the Tanner Appraisal's erroneous calculation and the Booth Appraisal's revised market value. (Am. Compl. ¶ 53.)

{27} As required by the promissory note renewals, WNC maintained a checking account with Alliance Bank. The checking account was one of several accounts alleged to have been seized by Alliance in early September 2010. (Am. Compl. ¶¶ 41, 55.) The total "seizure" included approximately $441,000 of Plaintiffs accounts. (Am. Compl. ¶ 55.) Plaintiffs allege that the funds were "seized" in "order to obtain an unfair leverage, an unfair advantage[,] and to attempt to intimidate the Plaintiffs into continuing to pay in accordance with the promissory notes." (Am. Compl. ¶ 116.) However, Alliance Bank "released" the "seized" accounts upon

demand by Plaintiff Venable on September 8, 2010.  (Am. Compl. ¶ 115.)

{28}     Plaintiffs allege that WNC has never been in default as to any obligation to Alliance Bank and has timely made all payments in an amount in excess of $240,000.  (Am. Compl. ¶ 58.)

III.

LEGAL ANALYSIS

A.

CHANGE OF VENUE

{29}     Defendants request that the Court: (1) either dismiss the case or find removal of the case to Cleveland County mandatory because Mecklenburg County is an improper venue and Defendants are residents of Cleveland County (Alliance Motion I); and (2) exercise its discretion and remove the action to Cleveland County for witness convenience (Alliance Motion II).  In support of these requests, Alliance submitted an affidavit from Defendant Ayscue that states that no party resided in Mecklenburg County at the commencement of this action.  (Alliance Supp. Br. Alliance Mot. I 3; Ayscue Aff. 2.)

{30}     Plaintiffs respond by arguing that: (1) Defendants have impliedly waived venue by failing to press their motions; and (2) Alliance Bank has contacts with Mecklenburg County sufficient to establish proper venue under section 1-79(a).  (Pls.' Resp. to Alliance Mots. I and II 2–5.)  Plaintiffs offer no rebuttal to the representations made in Defendant Ayscue's affidavit.

1.

ALLIANCE MOTION I

{31}     A motion to dismiss for improper venue should be treated as a removal action. *State v. Fayetteville St. Christian Sch.*, 299 N.C. 351, 357, 261 S.E.2d 908, 912, *appeal dismissed*, 449 U.S. 807 (1980); *see also Roberts v. Adventure Holdings, LLC*, 703 S.E.2d 784, 788 (N.C. Ct. App. 2010), *rev. denied*, 365 N.C. 187, 707 S.E.2d 241 (2011) ("It has been repeatedly held . . . that if an action is instituted in the wrong county it should be removed to the proper county, and not dismissed . . . .") (citation omitted).  The Court, therefore, treats Alliance Motion I as a removal

action.

{32}    By statute, a civil "action must be tried in the county in which the plaintiffs or the defendants, or any of them, reside at its commencement." N.C. GEN. STAT. § 1-82 (2011). A person is deemed to reside where they live, whereas a domestic corporation is deemed to reside either: "(1) [w]here the registered or principal office of the corporation . . . is located, or (2) [w]here the corporation . . . maintains a place of business . . . ." N.C. GEN. STAT. § 1-79(a)(1)–(2) (2011).

{33}    The trial court must transfer an action if it has been brought in the wrong county and a party has properly objected to venue. *Hawley v. Hobgood*, 174 N.C. App. 606, 609, 622 S.E.2d 117, 119 (2005). Procedurally, a proper objection to venue must be raised within the time limits specified in Rule 12(b)(3). *See* N.C. GEN. STAT. § 1-83; *Cheek v. Higgins,* 76 N.C. App. 151, 153, 331 S.E.2d 712, 714 (1985) ("The language of the statute is clear that the time for making the [objection] is before the time for filing [an] answer expires."). A motion within a responsive pleading is sufficient to satisfy this procedural requirement. *Hawley*, 174 N.C. App. at 609, 622 S.E.2d at 119. Furthermore, affidavits supporting an objection to venue may be considered and accepted as true in a court's ruling. *Godley Const. Co. v. McDaniel*, 40 N.C. App. 605, 608, 253 S.E.2d 359, 361 (1979).

{34}    In North Carolina, "[venue] may be waived by express or implied consent . . . and a defendant's failure to press his motion to remove has been found to be a waiver." *Miller v. Miller*, 38 N.C. App. 95, 97, 247 S.E.2d 278, 279 (1978). Whether removal has been "pressed" is a fact-specific inquiry. *Compare Johnson v. Hampton Indus.*, 83 N.C. App. at 157–58, 349 S.E.2d at 333 (ruling that implied waiver had occurred because the movant failed to raise the objection to venue during several sessions of court over a ten-month period), *and Miller*, 38 N.C. App. at 97–98, 247 S.E.2d at 279–80 (ruling defendant impliedly waived her motion to remove when she failed to appear at a second hearing five months after moving to continue the first hearing that took place a year after filing the motion), *with Swift & Co. v. Dan-Cleve Corp.*, 26 N.C. App. 494, 495, 216 S.E.2d 464, 465 (1975) (ruling that a four-month period is not an implication of waiver), *and Amanda Leigh*

*Pearman Trust # 2 v. Dennis*, No. COA08-1317, 2009 N.C. App. LEXIS 1237, at *12–13 (N.C. Ct. App. Aug. 4, 2009) (unpublished decision) (ruling no waiver had occurred because the motion was argued at the first available hearing after the motion was raised).

{35}  Plaintiffs point to *Miller* and *Johnson* to support their argument that Defendants impliedly waived their venue objection. (Pls.' Resp. Br. Alliance Mot. I 3–4.) The Court finds this argument unpersuasive. Unlike the movant in *Miller*, Alliance has not delayed the proceedings of this Court. *See* 38 N.C. App. at 97–98, 247 S.E.2d at 279–80. And, unlike the movant in *Johnson*, Alliance objected to venue in its Answer to Plaintiffs original Complaint and argued Alliance Motion I at the first available hearing. 83 N.C. App. at 157–58, 349 S.E.2d at 333.

{36}  The Court finds this case factually similar to *Dennis*, where the Court of Appeals held that the movant had not impliedly waived an objection to venue because the objection was argued at the first available hearing. 2009 N.C. App. LEXIS 1237, at *12–13. Here, Alliance included an objection to venue in its Answer and raised its objection again on December 19, 2011, after the case was assigned to this Court. Alliance then argued the motion at the first available hearing. Accordingly, the Court concludes Alliance has not impliedly waived its objection to venue.

{37}  Plaintiffs' second argument, that Alliance has contacts with Mecklenburg County sufficient to establish proper venue, also misses the mark. Plaintiffs correctly cite to section 1-79(a) as controlling the Court's determination of where a corporation resides. (Pls.' Resp. Br. Alliance Mot. I 5.) However, Plaintiffs' argument that "Alliance Bank's business in Mecklenburg County is so pervasive that it is in effect a place of business" fails under the express language of the statute. (Pls.' Resp. Br. Alliance Mot. I 5.) While in certain situations a court may look to where the corporation "is regularly engaged in carrying on business," N.C. Gen. Stat. section 1-79(a)(3),  this is only applicable if "no registered or principal office is in existence and no place of business is currently maintained or can reasonably be found . . . ." *Id.* Here, section 1-79(a)(3) does not apply because

Alliance Bank has a registered agent and principal place of business in Gaston County. (Ayscue Aff. ¶ 5; Ex. A.)

{38} Addressing the merits of Alliance Motion I, the language of section 1-82 is clear. At commencement, at least one party to this action must have resided in Mecklenburg County. N.C. GEN. STAT. § 1-82 (2011). Accepting as true the Amended Complaint's allegations, as well as the representations in Defendant Ayscue's affidavit, the Court finds the following: individuals Venable, Kee, Ayscue, and Edgar W. Tanner Jr., are all residents of Cleveland County, (Am. Compl. ¶¶ 2–3, 5; Ayscue Aff. ¶ 2), and corporations WNC, Alliance Bank, and Tanner Real Estate Services, Inc. have principal places of business and registered agents in Cleveland, Gaston, and Rutherford Counties, respectively. (Ayscue Aff. ¶¶ 5–7; Asycue Aff. Ex. A, B, C.) The Court concludes, therefore, that venue is improper in Mecklenburg County because no party resided in Mecklenburg County at the commencement of this action. Instead, venue would be proper in Cleveland County because at least one party resided there at the commencement of the action.[1]

{39} Accordingly, Alliance Motion I is **GRANTED** and the Court **ORDERS** that this action be transferred to Cleveland County, North Carolina.

2.

ALLIANCE MOTION II AND DEFENDANTS' JOINT MOTION FOR CHANGE OF VENUE

{40} Because the Court has ordered this action transferred to Cleveland County, Alliance Motion II and Defendants' Joint Motion are rendered **MOOT**.

B.

MOTIONS TO DISMISS – RULE 12(b)(6)

1.

STANDARD OF REVIEW

{41} On a motion to dismiss pursuant to Rule 12(b)(6), the question is "whether, as a matter of law, the allegations of the complaint, treated as true, are

---

[1] If venue is improper, the Court is not obligated to search for a proper venue, but is only required to determine if the requested venue is proper. *See Doss v. Nowell*, 268 N.C. 289, 291, 150 S.E.2d 394, 395–96 (1966). Alliance Motion I asserts that venue would be proper in Cleveland, Gaston, or Rutherford Counties. However, in its motion, Alliance only sought transfer to Cleveland County.

sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citation omitted).

{42} In considering a motion to dismiss under Rule 12(b)(6), "'the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted.'" *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). If "the complaint alleges facts that defeat the claim, the claim should be dismissed." *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346, 511 S.E.2d 309, 312 (1999) (citation omitted).

{43} "When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a motion for summary judgment." *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009). Inconsistencies between an incorporated document and the pleadings are resolved in favor of the incorporated document. *Reese v. Mecklenburg Cnty.*, 204 N.C. App. 410, 421, 694 S.E.2d 453, 461, *disc. rev. denied,* 364 N.C. 326, 700 S.E.2d 924 (2010) (ruling on a judgment on the pleadings that documents attached as exhibits will trump conflicting allegations in the pleadings); *see also Hall v. Sinclair Ref. Co.*, 242 N.C. 707, 711, 89 S.E.2d 396, 398 (1955) (upholding the dismissal of a complaint where the incorporated contract's terms defeated the allegations).

2.

PRELIMINARY INJUNCTION (ALLIANCE)

{44} Plaintiffs allege claims against Alliance for vicarious liability, negligence, fraud, breach of the implied duty of good faith, conversion, unfair and deceptive trade practices, and seek a preliminary injunction, punitive damages, and declaratory relief. Alliance argues that Plaintiffs' claims for injunctive relief should be dismissed if the court dismisses the underlying actions giving rise to injunctive relief. (Alliance Supp. Br. Alliance Mot. III 19.) However, because the Court concludes, *infra*, that Plaintiffs' claims for negligence, fraud, declaratory judgment,

and unfair and deceptive trade practices have been adequately pled, Plaintiffs may move for a preliminary injunction pursuant to Business Court Rule 15.2.

{45}  Accordingly, the Court **DENIES** Alliance Motion III as to Plaintiffs' motion for preliminary injunction.

3.

### NEGLIGENT MISREPRESENTATION (TANNER)

{46}  Defendant Tanner moves to dismiss Plaintiffs' negligent misrepresentation claim because the applicable statute of limitations has run. (Tanner Supp. Br. Tanner Mot. I 3–8.)

{47}  Tanner argues that N.C. Gen. Stat. section 1-15(c) (2011), the statute of limitations applicable to professional malpractice, should guide the Court's determination of this issue. Under section 1-15(c), "a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action . . . ." § 1-15(c). Since Tanner's "last act" occurred at the latest on April 15, 2006, the date Alliance Bank received Tanner's written appraisal (Am. Compl. ¶ 13), Tanner argues that the complaint in this case, filed on May 16, 2011, came more than five (5) years after the statute began to run. (Am. Compl. 19.) In a similar case, however, our Supreme Court distinguished professional malpractice claims from negligent misrepresentation claims for the purpose of selecting the appropriate statute of limitations. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 665, 488 S.E.2d 215, 223–24 (1997). In *Barger*, the Court held that where no professional relationship existed by contract between the parties, the "claim cannot fall under the professional malpractice statute of limitations." *Id.* at 665, 488 S.E.2d at 224. Instead, the claim for negligent misrepresentation remains subject to section 1-52(5).[2] *Id.* Here, Plaintiffs did not contract directly with Tanner for the appraisal. Rather, the professional relationship existed only between Tanner and Alliance. Therefore, the Court concludes that section 1-15(c) does not

---

[2] Section 1-52(5) sets forth the prescribed period to bring an action as "[w]ithin three years . . . [f]or criminal conversation, or for any other injury to the person or rights of another, not arising on contract . . . ." N.C. GEN STAT. § 1-52(5) (2011).

apply and section 1-52(5) is the applicable statute of limitations.

{48}     Although Tanner argues that the section 1-52 does not apply, our Supreme Court has consistently held to the contrary. *See Barger*, 346 N.C. at 666, 488 S.E.2d at 224; *Jefferson-Pilot Life Ins. Co. v. Spencer*, 336 N.C. 49, 442 S.E.2d 316, (1994). According to *Barger*, "a claim for negligent misrepresentation 'does not accrue until two events occur: first, the claimant suffers harm because of the misrepresentation, and second, the claimant discovers the misrepresentation.'" *Barger*, 346 N.C. at 666, 488 S.E.2d at 224 (quoting *Jefferson-Pilot*, 336 N.C. at 57, 442 S.E.2d at 320 (1994)).

{49}     Plaintiffs allege they discovered the purported misrepresentations in August 2010, after Matt Triplett left Alliance Bank and informed Plaintiffs of the defective appraisal (Am. Compl. ¶¶ 72, 97); and as a result of the negligent misrepresentations contained in the Tanner Appraisal, Plaintiffs were damaged. (Am. Compl. ¶73.) Plaintiffs brought this action on May 16, 2011, less than one year after the discovery of the purported misrepresentation. (Original Compl. 19.) The Court concludes, therefore, that Plaintiffs brought their claim within the applicable statute of limitations.

{50}     Accordingly, the Court **DENIES** Tanner Motion I as to Plaintiffs' negligent misrepresentation claim.

4.

VICARIOUS LIABILITY OF ALLIANCE BANK FOR THE TANNER APPRAISAL
(ALLIANCE)

{51}     "Generally, liability of a principal for the torts of his agent may arise in three situations: (1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is ratified by the principal; or (3) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business." *Creel v. N.C. HHS*, 152 N.C. App. 200, 202–03, 566 S.E.2d 832, 833 (2002) (internal citations omitted). "In the first two of these three situations, liability is based upon traditional agency principles; in the third of these three situations, liability is based upon the doctrine of respondeat superior." *Id.*

{52}    Here, Plaintiffs allege that Alliance Bank is vicariously liable for the alleged negligent misrepresentations contained in the Tanner Appraisal because an agency and employment relationship existed between Alliance Bank and Tanner. (Am. Compl. ¶ 75.)  The Court concludes that the claim here is based upon the specific theory that Tanner was an agent and employee of Alliance Bank and, therefore, conducts its analysis premised upon application of the doctrine of respondeat superior.

{53}    The doctrine of respondeat superior will generally hold an employer vicariously liable for the tortious acts committed by an employee within the scope of his employment.  *Creel*, 152, N.C. App. at 203, 566 S.E.2d at 833 (citation omitted). "Fundamental to the application of the doctrine of respondeat superior is the requirement that there be an employer-employee relationship between the parties." *Id.* (citation omitted).

{54}    While a North Carolina employer may be vicariously liable for the negligence of an employee, under a theory of respondeat superior, an employer is not generally liable for the negligence of an independent contractor. *Bridgestone/Firestone, Inc. v. Ogden Plant Maint. Co. of N.C.*, 144 N.C. App. 503, 507–08, 548 S.E.2d 807, 811 (2001), *aff'd*, 355 N.C. 274, 559 S.E.2d 786 (2002) (citation omitted).  Alliance argues that Tanner acted as an independent contractor and, therefore, the Bank is not liable for his alleged negligence.

{55}    The employer's level of control over the actor primarily distinguishes an employee from an independent contractor. *MGM Transp. Corp. v. Cain*, 128 N.C. App. 428, 431, 496 S.E.2d 822, 824 (1998).  An employee's work details will remain subject to the employer's control and direction, *id.*, whereas an independent contractor "exercises an independent employment and contracts to do certain work according to his own judgment and method, without being subject to his employer except as to the result of his work." *Gordon v. Garner*, 127 N.C. App. 649, 658, 493 S.E.2d 58, 64 (1997) (quoting *Youngblood v. North St. Ford Truck Sales*, 321 N.C. 380, 384, 364 S.E.2d 433, 437 (1988)).  Our Supreme Court in *McCown v. Hines*, identified several non-exclusive factors to evaluate an employer's level of control:

[Whether] [t]he person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

353 N.C. 683, 687, 549 S.E.2d 175, 177–78 (2001). Not all factors need to be present and no one factor is controlling of the analysis. *Id.* By interpreting the unambiguous language of an agreement, a court may determine the status of a contractee as a matter of law. *Johnson v. News & Observer Pub. Co.*, 167 N.C. App. 86, 88, 604 S.E.2d 344, 346 (2004).

{56}   Plaintiffs argue that "Alliance Bank contracted with the [sic] Tanner Defendants to prepare a fair market value appraisal of the property *based on the underwriting guidelines of Defendant Alliance Bank* . . . and Defendant Tanner agreed to prepare a fair market value appraisal *based upon the underwriting guidelines of Alliance Bank.*" (Pls.' Resp. Br. Alliance Mot. III 12) (citing Am. Compl. ¶ 10; Ex. 1) (emphasis added). The gravamen of Plaintiffs' argument for vicarious liability is the language of the appraisal contract that subjects Tanner's work details to the control of Alliance Bank. (Pls.' Resp. Br. Alliance Mot. III 12.) The Court disagrees with Plaintiffs' reading of the plain language of the contract.

{57}   No party has challenged the interpretation of the engagement agreement between Tanner and Alliance Bank, which was filed as an attachment and incorporated into the Amended Complaint. (Am. Compl. Ex. 1.) The Court does not find the language of the agreement to be ambiguous, therefore, the agreement may be interpreted as a matter of law. Plaintiffs cite to the following language in the agreement as subjugating Tanner to Alliance Bank: "*Based on* the required underwriting guidelines of Alliance Bank & Trust, a market value appraisal has been required for the proposed loan request." (Am. Compl. Ex. 1) (emphasis added). The Court concludes that the quoted language simply indicates that the Bank's underwriting guidelines require that the market value appraisal be

created, not that the appraisal be based upon the underwriting guidelines of Alliance, as Plaintiffs contend. Inconsistencies between the pleadings and incorporated documents are resolved in favor of the incorporated document. *Reese*, 204 N.C. App. at 421, 694 S.E.2d at 461. As such, the incorporated letter agreement does not support Plaintiffs' allegation that "Tanner agreed to prepare a fair market value appraisal *based upon* the underwriting guidelines of Alliance Bank." (Am. Compl. ¶ 10) (emphasis added). The Court concludes that Tanner's work details were not subjugated to the underwriting guidelines of Alliance Bank.

{58} In addressing Plaintiffs' second argument, the Court cannot find a "term or condition" that expressly or impliedly confers control of the Tanner Appraisal's work details upon Alliance Bank. The "terms and conditions" of the one-page letter agreement identify the property to be appraised, appraisal type, and point of contact for the appraisal. (Am. Compl. Ex. 1.) Furthermore, in applying the relevant *McCown* factors, the Court concludes that Tanner meets the definition of an independent contractor. He exercised independent employment through his separate and distinct business as a licensed real estate appraiser, (Am. Compl. Ex. 3 at 26); he was not paid a regular salary for the appraisal, but received two unconditional lump sum payments of $3,100 and $400 for the result of his work, (Am. Compl. ¶ 12); and the Tanner Appraisal's certification page states the appraisal's "opinions, analyses, and conclusions" were controlled by the USPAP standards, not Alliance. (Am. Compl. Ex. 3 at 26.) The Court, therefore, concludes as a matter of law that Tanner was an independent contractor.

{59} Accordingly, the Court **GRANTS** Alliance Motion III, dismissing Plaintiffs' claim for vicarious liability against Alliance Bank.

5.

BREACH OF FIDUCIARY DUTY (ALLIANCE)

{60} A fiduciary duty arises when "'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.'" *Allran v. Branch Banking and Trust Corp.*, 2011 NCBC 21 ¶ 23 (N.C. Super. Ct. July 6, 2011),

http://www.ncbusinesscourt.net/opinions/2011_NCBC_21.pdf (quoting *Curl v. Key*, 311 N.C. 259, 264, 316 S.E.2d 272, 275 (1984)). However, an ordinary debtor-creditor relationship generally does not give rise to such a "special confidence." *Peak Coastal Ventures, LLC v. SunTrust Bank*, 2011 NCBC 13 (N.C. Super. Ct. May 5, 2011), http://www.ncbusinesscourt.net/opinions/2011_ NCBC _13.pdf (concluding on a motion to dismiss that knowledge of a lendee's business plan was insufficient to create a relationship of special confidence because such knowledge was industry standard and considered due diligence); *see also Allran v. Branch Banking and Trust Corp.*, 2011 NCBC 21 (N.C. Super. Ct. July 6, 2011), http://www.ncbusinesscourt.net/opinions/2011_NCBC _21.pdf (concluding on a motion to dismiss, the lendee had alleged merely an ordinary debtor-creditor relationship because the documents produced by the lender were industry standard); *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992) (finding lendees failed to allege a relationship of special confidence or reliance because the lendees sought financial advice from private sources). On the other hand, these cases do not rule out the possibility that a fiduciary relationship may exist between debtor and creditor, given proper circumstances. *See Thompson*, 107 N.C. App. at 61, 418 S.E.2d at 699.

{61} Alliance contends that no fiduciary relationship arose between the parties because the Amended Complaint alleges a mere debtor-creditor relationship. (Alliance Supp. Br. Alliance Mot. III 5.) In support, Alliance argues that the documentation filed on behalf of the loan, the inspections of the project, and any financial advice rendered were part of Alliance's due diligence in a normal arms-length transaction. (Alliance Supp. Br. Alliance Mot. III 5.) In response, Plaintiffs argue that the allegations detail more than a mere debtor-creditor relationship because Alliance Bank acted as a financial and development advisor and completed financial feasibility pro forma statements on behalf of Plaintiffs. (Pls.' Reply Br. Alliance Mot. III 16.) The Court is persuaded by Plaintiffs' contentions.

{62} Accepting the allegations of the Complaint as true, Plaintiffs contend that Alliance acted not just as a lender but also as a financial and development

advisor for the project. (Am. Compl. ¶¶ 8, 77.) In addition to its knowledge about Plaintiffs' business plan, Alliance "review[ed] property development agreements and [made] suggested changes" and "[performed] inspections of the property and development." (Am. Compl. ¶ 57.) Alliance also "complet[ed] financial feasibility pro [forma]" statements that are traditionally completed by the debtor. (Am. Compl. ¶¶ 8, 42, 57.) These allegations distinguish this case from *Peak Coastal* and *Allran*. The Amended Complaint alleges conduct that exceeds mere creditor knowledge of a business plan. The Court concludes, therefore, that the Amended Complaint has sufficiently pled a fiduciary relationship between Plaintiffs and Alliance Bank. And, because Plaintiffs allege Alliance breached this relationship by failing to disclose the defective appraisal, (Am. Compl. ¶¶ 31–32, 34), Plaintiffs adequately state a claim for breach of fiduciary duty.

{63}    Accordingly, the Court **DENIES** Alliance Motion III as to Plaintiffs' breach of fiduciary duty claim.

6.

NEGLIGENCE (ALLIANCE)

{64}    Alliance argues Plaintiffs' negligence claim should be dismissed because Alliance Bank owed no duty to Plaintiffs. (Alliance Supp. Br. Alliance Mot. III 5.) "The essential elements of any negligence claim are the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff." *Harris v. DaimlerChrysler Corp.*, 180 N.C. App. 551, 555, 638 S.E.2d 260, 265 (2006) (quoting *Peace River Elec. Coop. v. Ward Transformer Co.*, 116 N.C. App. 493, 511, 449 S.E.2d 202, 214 (1994)).

{65}    As discussed above, the Amended Complaint alleges a fiduciary relationship between Plaintiffs and Alliance Bank. In its Amended Complaint, Plaintiff alleges that Alliance breached its duty by knowing of the purported misrepresentation in the Tanner Appraisal and failing to inform Plaintiffs on several occasions, including when Plaintiffs renewed and consolidated their loans in late 2008 and early 2009. (Am. Compl. ¶¶ 31–32, 34, 41, 46.) Plaintiffs further

allege that the breach of fiduciary duty proximately caused Plaintiffs to enter into contractual obligations with resulting damages in excess of $10,000. (Am. Compl. ¶¶ 78–80.) Plaintiffs' allegations are sufficient to state a claim for negligence.

{66} Accordingly, the Court **DENIES** Alliance Motion III as to Plaintiffs' negligence claim.

### 7.
### FRAUD (ALLIANCE)
#### a.
#### FRAUD BY AFFIRMATIVE MISREPRESENTATION

{67} "A cause of action for fraud is based on an affirmative misrepresentation of a material fact . . . or a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose." *Harton v. Harton*, 81 N.C. App. 295, 297, 344 S.E.2d 117, 119 (1986) (internal citations omitted). A sufficient pleading of fraud requires a "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 609, 659 S.E.2d 442, 449 (2008) (quoting *McGahren v. Saenger*, 118 N.C. App. 649, 654, 456 S.E.2d 852, 855 (1995)).

{68} The circumstances of fraud must be stated with particularity, but intent, knowledge, and other mental conditions may be averred generally. N.C. R. Civ. P. 9(b); *Terry v. Terry*, 302 N.C. 77, 84, 273 S.E.2d 674, 678 (1981). Under Rule 9(b), "the particularity requirement is met by alleging time, place[,] and content of the fraudulent representation, identity of the person making the representation[,] and what was obtained as a result of the fraudulent acts or representations." *Terry*, 302 N.C. at 85, 273 S.E.2d at 678. If a corporation is the subject of an allegation of fraud, the plaintiff must, out of fairness to the corporation, allege with specificity the individual who made fraudulent statements on behalf of the corporation. *Coley v. N.C. Nat'l Bank*, 41 N.C. App. 121, 125, 254 S.E.2d 217, 220 (1979).

{69}  "As to . . . the tort of fraud, when the party relying upon false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346, 511 S.E.2d 309, 313 (1999) (citation omitted).  In particular, allegations that a "plaintiff [is] fraudulently induced [by defendant] to forego further inquiry which she otherwise would have made" may support a claim of justifiable reliance.  *Davis v. Sellers*, 115 N.C. App. 1, 11, 443 S.E.2d 879, 885 (1994) (concluding a jury could find reasonable reliance for a fraud claim where plaintiff relied on statements from defendant that there were no problems with the house even though plaintiff had notice of the potential problem from her own inspector).

{70}  Here, Plaintiffs allege that, after Alliance became aware of the defects and errors in the Tanner Appraisal, (1) Matt Triplett "informed [Plaintiffs] that because of the downturn in the economy there was a problem with Defendant Tanner's appraisal, but did not inform them the real reason was because the appraisal was misleading, invalid, defective and erroneous"; (2) the representation was "reasonably calculated to deceive . . . Plaintiffs Venable and Kee in order for . . . Plaintiffs to agree to provide additional guarantees and further collateral as security"; (3) "Alliance Bank made the misrepresentation . . . with the intent to deceive the Plaintiffs"; (4) "Plaintiffs were in fact deceived by . . . Alliance Bank's misrepresentation . . . of material facts"; and (5) Plaintiffs entered "into agreements to consolidate the loans, provide additional collateral and guarantee the debt as set forth in this [Amended] Complaint."  (Am. Compl. ¶¶ 41–42, 46, 86, 89–91.)

{71}  Plaintiffs specifically assert that, after informing Plaintiffs about a problem with the Tanner Appraisal, Triplett's response that the economic downturn caused the devaluation in the appraisal value and that the project was still financially stable dissuaded Plaintiffs from investigating.  (Am. Compl. ¶¶ 42, 93, 96.)  Given Alliance's fiduciary relationship with Plaintiffs and Plaintiffs' own awareness of existing economic conditions, Plaintiffs allege that they reasonably

believed Triplett and relied on his statements in opting not to investigate further. (Am. Compl. ¶ 96.) Although the presumption of truth does not extend to these legal conclusions, Plaintiffs sufficiently allege facts surrounding the circumstances of Triplett's statements to support their allegation that Alliance fraudulently induced Plaintiffs to forego further inquiry and, in effect, denied them an opportunity to investigate. Therefore, the Court concludes that Plaintiffs have sufficiently stated with particularity a claim for fraud by affirmative misrepresentation.

{72}    Accordingly, the Court **DENIES** Alliance Motion III as to Plaintiffs' claim for fraud by misrepresentation.

b.

FRAUD BY CONCEALMENT

{73}    To successfully plead fraud by concealment, a plaintiff must allege:

> (1) the relationship [between plaintiff and defendant] giving rise to the duty to speak; (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what [the defendant] gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance.

*Allran*, 2011 NCBC 21 ¶ 38 (adopting *Breeden*, 171 F.R.D. at 195–96).

{74}    Having previously concluded that the Amended Complaint adequately alleges a fiduciary relationship between Plaintiffs and Alliance Bank, applying the *Breeden* test, the Court concludes that the existence of that relationship would be sufficient to impose a duty upon the Bank to disclose to Plaintiffs the alleged defects in the Tanner Appraisal when the Bank became aware of them. *Harton*, 81 N.C. App. at 297, 344 S.E.2d at 119. Further, Plaintiffs allege that the Confirmation of Business Loan Approval, dated December 10, 2007, provides the content of the information withheld and triggered Matt Triplett's duty to speak regarding the erroneous calculation. (Am. Compl. ¶¶ 32–33.)

{75}     Having concluded that Plaintiffs' have adequately alleged the existence of a fiduciary relationship, the Court further concludes that Plaintiffs have adequately alleged reliance on Defendants concealment of the defects in the Tanner Appraisal that was "reasonably calculated to induce [them] to forego investigation into the problem" and resulted in damages flowing from the renewed promissory notes. (Am. Compl. ¶¶ 36, 93, 96.)  More specifically, Plaintiffs point to the assurances of Triplett and Plaintiffs' reasonable belief in his explanation that the economic downturn was to blame. (Am. Compl. ¶ 96.)  The Court concludes, therefore, that Plaintiffs have sufficiently pled facts to support each of the elements of a claim of fraudulent concealment.

{76}     Accordingly, the Court **DENIES** Alliance Motion III as to Plaintiffs' claim for fraud by concealment.

c.

CONSTRUCTIVE FRAUD

{77}     In North Carolina, a constructive fraud action requires allegations of (1) a relationship of trust and confidence akin to that of a fiduciary and (2) that the defendant took advantage of that position of trust in order to benefit himself to the detriment of the plaintiff. *Sterner v. Penn*, 159 N.C. App. 626, 631, 583 S.E.2d 670, 674 (2003).  "Put simply, a plaintiff must show (1) the existence of a fiduciary duty, and (2) a breach of that duty." *Governor's Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 249–50, 567 S.E.2d 781, 788 (2002).  "Under our law a breach of fiduciary duty raises a presumption of constructive fraud . . . ." *Bumgarner v. Tomblin*, 92 N.C. App. 571, 575, 375 S.E.2d 520, 523 (1989) (citing *Miller v. First Nat'l Bank of Catawba County*, 234 N.C. 309, 67 S.E.2d 362 (1951)).  Having adequately alleged a claim for breach of fiduciary duty, the Court concludes Plaintiffs' claim for constructive fraud has likewise been sufficiently pled.

{78}     Accordingly, the Court **DENIES** Alliance Motion III as to Plaintiffs' claim for constructive fraud.

8.

BREACH OF CONTRACT (TANNER)

{79}     Tanner argues that Plaintiffs' breach of contract claim is barred by the three-year statute of limitations.  N.C. GEN. STAT. § 1-52(1) (2011); (Tanner Supp. Br. Tanner Mot. I 9–10.)  In a breach of contract action, North Carolina courts have consistently held that the statute begins to run when the breach occurs.  *See Penley v. Penley*, 314 N.C. 1, 20, 332 S.E.2d 51, 62 (1985); *Harrold v. Dowd*, 149 N.C. App. 777, 781, 561 S.E.2d 914, 917–18 (2002).  While Tanner relies on language from our Court of Appeals that the claim "accrues at the time of notice of the breach," in context, this language merely reapplies the well-settled rule above.  *Henlajon, Inc. v. Branch Highways, Inc.*, 149 N.C. App. 329, 335, 560 S.E.2d 598, 603 (2002).  In *Henlajon*, the defendant sent a letter denying the existence of a contract and refusing to perform, which the Court held constituted the breach.  *Id.*  Therefore, the notice was the breach which triggered the three-year statute of limitations.

{80}     Here, Plaintiffs allege that Tanner breached its contract with Alliance Bank by failing to provide them with an accurate appraisal.  (Am. Compl. ¶ 105.)  According to the Amended Complaint, Tanner sent the allegedly defective appraisal on April 14 or 15, 2006.  (Am. Compl. ¶ 13.)  Plaintiffs brought this action on May 16, 2011, more than five years after the breach.  (Am. Compl. 19.)  Therefore, Plaintiffs' claim for breach of contract is barred by the applicable statute of limitations.

{81}     Accordingly, the Court **GRANTS** Tanner Motion I as to Plaintiffs' claim for breach of contract.

9.

BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
(ALLIANCE)

{82}     "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement."  *Governor's Club Inc.*, 152 N.C. App. at 251, 567 S.E.2d at 789 (citation omitted).  Alliance contends that it owed no legal duty under the loan contract to disclose the defect in the appraisal to Plaintiffs.  (Alliance Supp. Br. Alliance Mot. III 10–11.)  As discussed above, the Court has concluded

that the Amended Complaint adequately alleges a fiduciary relationship between Plaintiffs and Alliance.  For purposes of this claim, Plaintiffs have sufficiently alleged a fiduciary duty with respect to the agreement with Alliance and that Alliance breached their duty to Plaintiffs by not disclosing the defects in the appraisal.  (Am. Compl. ¶¶ 31–32, 34.)  By failing to disclose the defects prior to entering the additional guarantee agreement, Plaintiffs allege Defendants denied them the benefit of the fiduciary duty under the contract, in bad faith.  (Am. Compl. ¶ 110.)  The Court concludes that Plaintiffs have sufficiently pled a claim for breach of the covenant of good faith and fair dealing implied in the contract.

{83}    Accordingly, the Court **DENIES** Alliance Motion III as to Plaintiffs' breach of implied covenant of good faith and fair dealing claim.

10.

CONVERSION (ALLIANCE)

{84}    Conversion is "'an unauthorized assumption and exercise of the right of ownership over [the personal property of] another, to . . . the exclusion of an owner's rights.'"  *Straton v. Royal Bank of Canada*, 712 S.E.2d 221, 227 (N.C. Ct. App. 2011) (quoting *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956)).  A plaintiff must plead two essential elements to establish conversion: (1) "ownership in the plaintiff" and (2) "a wrongful deprivation by defendant."  *Gallimore v. Sink*, 27 N.C. App. 65, 67, 218 S.E.2d 181, 183 (1975) (citation omitted).  The core of the tort is the wrongful deprivation, not the procurement of property.  *Id.* at 67, 218 S.E.2d at 183.  One in lawful possession of property may not be accused of depriving another of possession wrongfully, unless the owner makes a demand for the return of property and is refused by the possessor.  *Hoch v. Young,* 63 N.C. App. 480, 483, 305 S.E.2d 201, 203 (1983).

{85}    Alliance contends that no conversion occurred because demand and refusal are necessary elements of a conversion claim, and the Amended Complaint alleges Alliance Bank released the allegedly converted checking accounts after the initial demand was made by Plaintiff Venable.  (Alliance Supp. Br. Alliance Mot. III 12–13.)  The Court agrees with Alliance's position.

{86} In North Carolina, money deposited into a bank account creates a contractual relationship between the bank and the depositor whereby ownership of the deposited money passes to the bank and the bank, in paying out a deposit, must comply with its agreement with the depositor. *Holloway v. Wachovia Bank & Trust Co., N.A.*, 333 N.C. 94, 103, 423 S.E.2d 752, 757 (1992); *see also Schwabenton v. Security Nat. Bank of Greensboro*, 251 N.C. 655, 111 S.E.2d 856 (1960).

{87} Plaintiffs allege they deposited money in accounts with Alliance Bank and that from September 3, 2010, to September 7, 2010, Defendant seized and converted their accounts. (Am. Compl. ¶¶ 41, 55, 113, 114.) Plaintiffs further allege that, after the seizure, Alliance Bank released the accounts upon Plaintiff Venable's demand. (Am. Compl. ¶ 115.) Plaintiffs otherwise do not point to any specific provisions in the deposit agreement that the Bank violated, and the accounts were released after Plaintiff Venable made a proper demand. Plaintiffs' allegations, standing alone, defeat their claim for conversion as a matter of law.

{88} Accordingly, the Court **GRANTS** Alliance Motion III as to Plaintiffs' claim for conversion.

11.

UNFAIR AND DECEPTIVE TRADE PRACTICES (ALLIANCE)

{89} "In order to establish a violation of N.C.G.S. § 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Gray v. N. Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000) (internal citations omitted). "'Proof of fraud [will] necessarily constitute a violation of the prohibition against unfair and deceptive acts . . . .'" *Willen v. Hewson*, 174 N.C. App. 714, 720, 622 S.E.2d 187, 191 (2005) (quoting *Bhatti v. Buckland,* 328 N.C. 240, 243, 400 S.E.2d 440, 442 (1991)) (internal quotations omitted). Furthermore, the relationship between borrower and lender falls within the purview of "in or affecting commerce" as defined under section 75-1.1. *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 261–62, 266 S.E.2d 610, 620 (1980), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385

(1988).  Given that Plaintiffs sufficiently pled claims for fraud, the Court concludes that Plaintiffs adequately pled their claim for unfair and deceptive trade practices.

{90}    Accordingly, the Court **DENIES** Alliance Motion III as to Plaintiffs' unfair and deceptive trade practices claim.

12.

PUNITIVE DAMAGES

{91}    Punitive damages are a statutory remedy that may be awarded if a claimant proves a defendant is liable for compensatory damages coupled with either: (1) fraud, (2) malice or, (3) willful or wanton conduct.  N.C. GEN. STAT. § 1D-15(a).  Plaintiff has sufficiently alleged claims with compensatory damages, as well as, claims for fraud.  Accordingly, the Court **DENIES** Alliance Motion III as to Plaintiffs' potential punitive damages remedy.

13.

RESCISSION OF CONTRACT FOR MUTUAL MISTAKE AND FRAUD IN THE INDUCEMENT (ALLIANCE)

{92}    Rescission is an equitable remedy.  *Wilson v. Wilson,* 261 N.C. 40, 43, 134 S.E.2d 240, 243 (1964).  In equity, a party may seek rescission of a contract based on the mutual mistake of the parties.  *Marriott Financial Serv., Inc. v. Capitol Funds, Inc.,* 288 N.C. 122, 135, 217 S.E.2d 551, 560 (1975).  To avoid a contract under this theory, "the mistake [must be] common to both parties and by reason of it each has done what neither intended."  *Id.* (quoting *MacKay v. McIntosh*, 270 N.C. 69, 73, 153 S.E.2d 800, 804 (1967)).  In other words, the mistake must form "the basis of the contract . . . [and] be of the essence of the agreement." *Howell v. Waters*, 82 N.C. App. 481, 486, 347 S.E.2d 65, 69 (1986) (quoting *MacKay*, 270 N.C. at 73–74, 153 S.E.2d at 804).  Even still, equity will not allow for rescission for mutual mistake where a party has assumed the risk of a mistake either (1) by agreement, (2) by a court ruling it is reasonable, or (3) by a party's understanding at the time of contract that he has only limited knowledge but treats his limited knowledge as sufficient.  *Howell*, 82 N.C. App. at 488, 347 S.E.2d at 70 (citing RESTATEMENT (SECOND) CONTRACTS § 154 (1979)).

{93}     Alliance argues that the mistake as to the value of the property was not material to the contract and that, regardless, Plaintiffs assumed the risk of the mistake by treating their limited knowledge as sufficient.  Generally, both of these determinations require more factual inquiry than is proper on a 12(b)(6) motion to dismiss.  *See Howell*, 83 N.C. App. at 489, 347 S.E.2d at 70 ("[W]hether he assumed the risk of a mistake . . . [is a] question of fact to be determined by a jury.").  In any case, accepting the allegations as true, the Court finds no facts alleged to defeat the claim of mutual mistake.  Plaintiff alleges a mistake by both parties as to the value of the property (Am. Compl. ¶ 16), that this mistake formed the basis for the amount of money loaned to Plaintiffs (Am. Compl. ¶ 17), and that both parties based their knowledge on the opinion of a licensed appraiser. (Am. Compl. ¶ 135.)  At this stage, the Court concludes that Plaintiffs have stated a claim for rescission based on mutual mistake sufficient to survive Defendant's motion to dismiss.

{94}     Likewise, fraud can support the rescission of an agreement.  *See Marriott Financial*, 288 N.C. at 136, 217 S.E.2d at 560.  As Plaintiffs have sufficiently alleged fraud against Alliance in connection with the loan agreements, they have also properly stated a claim for rescission by fraud.

{95}     Accordingly, the Court **DENIES** Alliance Motion III as to Plaintiffs' potential rescission remedy based on mutual mistake and fraud in the inducement.

13.

DECLARATORY JUDGMENT (ALLIANCE)

{96}     Alliance argues that the claim for declaratory relief should be dismissed because all underlying claims should be dismissed.  Because several of Plaintiffs' underlying claims have been sufficiently pled, declaratory relief may be necessary to clarify the parties' legal relations and afford relief from uncertainty related to this litigation.  *See Lynn v. Lynn*, 202 N.C. App. 423, 430, 689 S.E.2d 198, 204 (2010).

{97}     Accordingly, the Court **DENIES** Alliance Motion III as to Plaintiffs' claim for declaratory relief.

C.

MOTION TO DISMISS AND JUDGMENT ON THE PLEADINGS

ALLIANCE'S CROSS COMPLAINT

{98}    Tanner has filed motions for judgment on the pleadings or to dismiss for failure to state claims upon which relief can be granted with respect to Cross-Claim Plaintiff Alliance's Complaint.  (Tanner Mots. II and III.)  In North Carolina,

> [b]oth a motion for judgment on the pleadings and a motion to dismiss for failure to state a claim upon which relief can be granted should be granted when a complaint fails to allege facts sufficient to state a cause of action or pleads facts which deny the right to any relief. *Compare Jones v. Warren,* 274 N.C. 166, 169, 161 S.E.2d 467, 470 (1968) (judgment on pleadings) *with Sutton,* at 102–03, 176 S.E.2d at 165–66 (failure to state a claim upon which relief can be granted).

*Robertson v. Boyd*, 88 N.C. App. 437, 440, 363 S.E.2d 672, 675 (1988).

{99}    In their cross-claim Complaint, Alliance sufficiently references Plaintiffs' Amended Complaint and other relevant documents, (Alliance Ans. 22–24), to incorporate the documents into the cross-claim Complaint. *See Schlieper*, at 261, 672 S.E.2d at 551.  As such, this motion may properly be decided under Rule 12(b)(6), *Robertson*, 88 N.C. App. at 441, 363 S.E.2d at 675 (citation omitted), rendering a ruling under Rule 12(c) redundant.  *Id.* (holding that, when everything considered was incorporated into the complaint, such that the Court properly ruled under Rule 12(b)(6), the subsequent order under Rule 12(c) was redundant).

1.

STATUTE OF LIMITATIONS – NEGLIGENCE AND BREACH OF CONTRACT

{100}  "Once a defendant raises a statute of limitations defense, the burden of showing that the action was instituted within the prescribed period is on the plaintiff.  A plaintiff sustains this burden by showing that the relevant statute of limitations has not expired." *Shepard v. Ocwen Fed. Bank, FSB*, 172 N.C. App. 475, 478, 617 S.E.2d 61, 63 (2005), *aff'd*, 361 N.C. 137, 638 S.E.2d 197 (2006) (internal quotations omitted).

{101} "The applicable statute of limitations for negligence[] and breach of contract is three years." *Harrold v. Dowd*, 149 N.C. App. 777, 781, 561 S.E.2d 914, 917 (2002) (citing N.C. GEN. STAT. §§ 1-52(1), (5) (2011)). The statute of limitations begins to run on a breach of contract claim when the breach occurs. *Id.* (citing *Penley*, 314 N.C. at 20, 332 S.E.2d at 62). A negligence claim "accrues when the wrong giving rise to the right to bring suit is committed, even though . . . the injuries cannot be discovered until a later date." *Id.* at 781, 561 S.E.2d at 918.

{102} Here, both the breach and the wrong occurred when Tanner delivered the defective appraisal to Alliance in April 2006.[3] (Alliance Ans. Am. Compl. ¶ 13.) Alliance did not file its cross-claims until August 12, 2011, more than five years later. (Alliance Ans. 26.) Therefore, Alliance's cross-claims for negligence and breach of contract are barred by the statute of limitations.

{103} Accordingly, the Court **GRANTS** Tanner Motion III as to Alliance's cross-claim for negligence and breach of contract.

## 2.

## EXONERATION

{104} Tanner argues that a claim for exoneration does not exist under North Carolina law. (Tanner Supp. Br. Tanner Mot. III 6.) Alliance failed to argue in opposition to Tanner's assertion. However, the Court will treat the exoneration cross-claim as a claim for indemnification. *See generally Anderson v. Robinson*, 275 N.C. 132, 135, 165 S.E.2d 502, 504 (1969) (treating defendant's claim for "complete exoneration or indemnity" as a claim for indemnification); *Edwards v. Hamill*, 262 N.C. 528, 530–31, 138 S.E.2d 151, 153 (1964) (treating defendant's goal of "complete exoneration or indemnity" as a claim for indemnification).

## 3.

## INDEMNIFICATION

---

[3] Tanner and Alliance dispute the precise day in April on which Tanner delivered the appraisal. (Tanner Supp. Br. Tanner III 3; Alliance Ans. Am. Compl. ¶ 13.) However, this inconsistency is irrelevant given that either date would leave the filing of the claim outside the statute of limitations.

{105}   Asserting that its potential liability to Plaintiffs arose from Tanner's negligence, Alliance brought a cross-claim against Tanner for indemnification. (Alliance Ans. 22–23.)

{106}   In North Carolina, a right to indemnification can arise from an express contract, a contract implied in fact, or a contract implied-in-law. *See Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 38, 587 S.E.2d 470, 474 (2003). Indemnification from a contract implied in fact applies when the parties' relationship and surrounding circumstances tend to show the intent to indemnify or the existence of an indemnification agreement. *Id.* A claim for indemnity through a contract implied in law arises when,

> (1) [defendants] are jointly and severally liable to the plaintiff, and (2) either (a) one has been passively negligent[,] but is exposed to liability through the active negligence of the other or (b) one alone has done the act which produced the injury but the other is derivatively liable for the negligence of the former.

*Edwards*, 262 N.C. at 531, 138 S.E.2d at 153.  Such derivative liability would exist in a relationship giving rise to vicarious liability.  However, "'[i]t has long been . . . the general rule that there is no vicarious liability upon the employer for the torts of an independent contractor.'" *Health Mgmt. Associates, Inc. v. Yerby*, 715 S.E.2d 513, 519 (N.C. Ct. App. 2011) (quoting *Sullivan v. Smith*, 56 N.C. App. 525, 531, 289 S.E.2d 870, 874 (1982)) (internal quotations omitted).

{107}   No party in this case has pled an express contract for indemnification between Alliance and Tanner, and the Court concluded that Alliance is not vicariously liable for the acts of Tanner.  However, the Court cannot conclude as a matter of law whether an indemnification agreement may be implied in fact from the parties' intent and attendant circumstances.

{108}   Accordingly, the Court **DENIES** Tanner Motion III as to Alliance's cross-claim for indemnification.

4.

CONTRIBUTION

{109}  "Contribution . . . arises when more than one tortfeasor is found liable for the plaintiff's injury." *Bridgestone/Firestone*, 144 N.C. App. at 509, 548 S.E.2d at 812 (internal quotations omitted).  The rights of contribution and indemnity are mutually inconsistent, but inconsistent defenses may be pled.  *Edwards*, 262 N.C. at 531, 138 S.E.2d at 153 (citing *Woods v. Turner*, 261 N.C. 643, 135 S.E.2d 664 (1964)).  Since the pleadings allege fault against both Alliance and Tanner, a claim for contribution may properly be pled in this action.

{110}  Accordingly, the Court **DENIES** Tanner Motion III as to Alliance's cross-claim for contribution.

IV.

CONCLUSION

{111}  The Court **GRANTS** Alliance's Motion to Change Venue pursuant to Section 1-83(1), thus rendering Alliance Motion II and Defendants' Joint Motion as moot; **GRANTS** Alliance's Motion to Dismiss with respect to Plaintiffs' claims for vicarious liability and conversion; **GRANTS** Tanner's Motion to Dismiss with respect to Plaintiffs' claim for breach of contract; **GRANTS** Tanner's Motion to Dismiss with respect to Alliance's negligence and breach of contract cross-claims; and **DENIES** all of movants' remaining motions.

{112}  **WHEREFORE**, the Court hereby **ORDERS** the above-captioned action transferred to Cleveland County, North Carolina and **DIMISSES** Plaintiffs' Third Claim (Vicarious Liability), Fifth Claim (Breach of Contract), and Seventh Claim (Conversion), and Alliance Bank's Second (Breach of Contract) and Third Cross-Claim (Negligence) against Tanner respectively.


**SO ORDERED**, this the 2d day of October, 2012.